THIRD DIVISION

September 10, 1997

No. 1-95-1337

EMPLOYERS INSURANCE OF WAUSAU, )

A MUTUAL COMPANY, )

) Appeal from the Circuit

Plaintiff-Appellant, ) Court of Cook County

)

v. )

)

EHLCO LIQUIDATING TRUST, ) Honorable 

NOEL H. GOODMAN, and ) Aaron Jaffe,

C.H. HEATH COMPENSATION AND ) Judge Presiding.

LIABILITY INSURANCE COMPANY, )

)

Defendants-Appellees. )

JUSTICE GORDON delivered the opinion of the court:

This insurance coverage dispute involves two underlying proceedings against Ehlco Liquidating Trust (Ehlco) and affiliated entities for environmental property damages allegedly caused by those parties at two industrial sites, one located in Wyoming and the other in Mena, Arkansas.  Apparently, Ehlco Liquidating Trust is a trust created by order of the Delaware Chancery Court to resolve the contingent liabilities of Edward Hines Lumber Company (Hines), a dissolved Delaware corporation.  The instant appeal arises from a declaratory judgment action filed by plaintiff Employers Insurance of Wausau, A Mutual Company (Wausau) against Ehlco; Ehlco's trustee, Noel H. Goodman; and C.H. Heath Compensation and Liability Insurance Company (Heath), which is identified as the successor to Employers Surplus Lines Insurance Company, Hines' excess liability carrier.  Wausau's original declaratory complaint also named 15 other insurance carriers in addition to Heath as defendants, who with the exception of Heath were each dismissed from this action prior to the entry of the orders from which this appeal was taken.  In its first-amended complaint filed in this action, Wausau sought a declaration that it owed no duty to defend or indemnify Ehlco in an underlying suit concerning environmental property damage at an Ehlco-affiliated industrial site in Wyoming.  Ehlco filed its answer and a motion for judgment on the pleadings pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(e) (West 1994)), seeking defense and indemnification coverage with respect to the underlying Wyoming action.  While that motion was pending, Ehlco moved for leave to file a counterclaim for declaratory judgment against Wausau and Heath seeking defense and indemnification coverage with respect to underlying administrative proceedings and a subsequent consent decree action initiated by the United States Environmental Protection Agency (USEPA) concerning environmental property damage at an Ehlco-affiliated site in Mena, Arkansas.  The underlying proceedings in Mena, Arkansas concerned allegations of environmental property damage similar to that which allegedly occurred at the Wyoming site.  On February 28, 1994, the court granted Ehlco leave to file its Mena counterclaim.

Contemporaneously on that date, Wausau obtained leave of court to file its second-amended complaint (in lieu of filing an answer to Ehlco's Mena counterclaim), in which it reiterated its allegations regarding the Wyoming site and additionally sought declaratory relief with respect to the Mena site.  Thereafter, Wausau moved to dismiss Ehlco's Mena counterclaim pursuant to sections 2-615(e) and 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-615(e), 2-619(a)(5) (West 1994) on statute of limitations grounds and on the grounds that Hines' notice to Wausau regarding the Mena contamination had been untimely.  Ehlco then filed a cross-motion for judgment on the pleadings with respect to the Mena counterclaim.  Prior to any ruling on these motions, Wausau filed a motion seeking leave of court to file its third-amended complaint.  The trial court granted Wausau leave to file its third-amended complaint without prejudice to Ehlco's right to oppose the legal and factual sufficiency thereof and without waiver of any defenses to it.  That order also provided that Ehlco's pending motions for judgment on the pleadings as to both sites would stand as to the third-amended complaint, and that Ehlco's answer, affirmative defenses and counterclaim would stand to the extent that Wausau's third-amended complaint repeated the allegations and claims of its second-amended complaint.  In its third-amended complaint, Wausau repeated the allegations in its previous complaint and added several new counts seeking a determination of noncoverage under the subject policies.  In response, Ehlco filed a motion to strike all of the new counts of the third-amended complaint, arguing that the new claims were unsupported by sufficient factual allegations.  In addition, Ehlco sought to strike Wausau's jury demand.

On November 7, 1994, the trial court granted both of Ehlco's motions for judgment on the pleadings, finding that there was coverage in favor of Ehlco as to both sites.  In its order, the trial court held that Wausau had a duty to defend Ehlco in both underlying actions, and that Ehlco had breached that duty.  The trial court therefore held that Ehlco was estopped from raising any policy defenses to coverage and from arguing that Ehlco had failed to satisfy conditions precedent to coverage such as timely notice.  The trial court also granted Ehlco's motion to strike the new counts and allegations of Wausau's third-amended complaint, apparently on the grounds that the new allegations therein were conclusory and unsupported by allegations of fact, and because in any event, Wausau was estopped from asserting any of the policy defenses in those new counts because of its breach of its duty to defend.  In sustaining that motion, the court also said that "the court agrees with all of Ehlco's arguments presented in this motion," which Wausau now construes to be a determination that the court struck its jury demand as well.  After the denial of various post-trial motions to reconsider filed by Wausau (addressed more fully below in our discussion of our jurisdiction to hear this appeal), Wausau appealed.

I. THE UNDERLYING ACTIONS

As noted above, this case involves two underlying proceedings, one in Wyoming and one in Mena, Arkansas.  The Wyoming action was initiated against Ehlco by the Union Pacific Railroad Company (Union Pacific), and the Arkansas proceedings were initiated against Hines by the USEPA.  Each underlying proceeding involved allegations of contamination and property damage caused by Ehlco-affiliated entities which operated industrial wood-treatment facilities in Wyoming and in Arkansas and which allegedly dispersed hazardous wastes into the environment.
(footnote: 1)
[Nonpublishable material under Supreme Court Rule 23 omitted.]

The question concerning Wausau's duty to defend with respect to the USEPA's proceedings against Hines relating to the Mena site requires a more complex analysis.  Wausau would urge that it had no duty to defend in those proceedings since they did not constitute a "suit" as defined by the subject policies and under Illinois law.  We agree.  Our supreme court's decision in 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co
., 166 Ill. 2d 520, 655 N.E.2d 842 (1995) is directly in point.  In 
Lapham-Hickey
, the relevant coverage provisions required the insurer to defend "suits" against the insured.  In that case, the insured received a letter from the USEPA stating that it was potentially responsible for the costs of an environmental cleanup, and also received a draft consent order and a "no action" letter informing the insured that it probably would not be held responsible for the costs of any cleanup.  None of those written documents led to the filing of any suit against the insured.  The 
Lapham-Hickey
 court reasoned that since the subject policy employed the term "suit" in discussing the carrier's duty to defend, no such duty would be invoked absent the filing of a suit against the insured in "actual court proceedings."  166 Ill. 2d at 532, 655 N.E.2d at 847
.  On that basis, the 
Lapham-Hickey
 court held that no duty to defend was triggered since a "suit" exists in an environmental coverage context only when there has been a proceeding against the insured filed in a court of law.  The 
Lapham-Hickey
 court stated that its holding was consistent with the manner in which courts determine whether a duty to defend exists, 
i.e.
, by comparing the allegations of the underlying complaint to the relevant policy provisions to see if coverage is even potentially alleged by the pleadings.  Without the filing of a suit in a judicial proceeding, there would be no such complaint, and therefore, no duty to defend would arise.

In the instant case, as in 
Lapham-Hickey
, the Wausau policies state that Wausau

"shall have the right and duty to defend any suit against the insured seeking damages***[for] property damage, even if the allegations of the suit are groundless, false or fraudulent ***."

As in 
Lapham-Hickey
, here, because no suit was filed with respect to the underlying USEPA proceedings concerning the Mena site prior to 1988, Wausau's duty to defend was not triggered prior to that time.  See also 
Fruit of the Loom, Inc. v. Travelers Indemnity Co.
, 284 Ill. App 3d 485, 672 N.E.2d 278 (1996) (no duty to defend because no suit was filed in that no judicial proceeding was commenced); 
Forest Preserve District of DuPage County v. Pacific Indemnity Co.
, 279 Ill. App. 3d 728, 665 N.E.2d 305 (1996).

Ehlco would urge that 
Lapham-Hickey
 should not be applied retroactively to the facts here since that case was decided after this action was filed and after judgment was entered.  However, it is well-settled that 
Lapham-Hickey
 is to be given retroactive application.  See 
Benoy Motor Sales, Inc. v. Universal Underwriters Insurance Co
, No. 96-0536, slip op. at 6 (Ill. App. Ct. April 10, 1997) ("
Lapham-Hickey
's requirement of a lawsuit to trigger the insurance company's duty to defend is to be applied retroactively."); 
Fruit of the Loom
, 284 Ill. App. 3d at 496, 672 N.E.2d at 286 ("
Lapham-Hickey
 is to be given retroactive application because the Supreme Court's opinion in 
Lapham-Hickey
 did not state that it was prospective, and the opinion on its face applies to the litigants in the 
Lapham-Hickey
 case."); 
Forest Preserve
, 279 Ill. App. 3d 728, 665 N.E.2d 305.  See generally 
Lannom v. Kosco
, 158 Ill. 2d 535, 634 N.E.2d 1097 (1994) (supreme court has power to declare when a decision will apply prospectively only, and in the past has said so expressly when it intended for prospective application alone; supreme court's decisions apply retroactively to cases pending at time decision is announced).

In addition, Ehlco apparently contends that by virtue of the filing of the federal consent decree action, Wausau became retroactively responsible for Hines' defense costs incurred in response to the USEPA's administrative proceedings and investigation of the Mena site, dating back to the USEPA's letter to Hines of March 18, 1982.  In support, Ehlco relies upon the decision of 
Detrex Chemical Industries, Inc. v. Employers Insurance of Wausau
, 681 F. Supp. 438 (N.D. Ohio 1987) (federal district court decision, applying Ohio law, stating that even if a "potentially responsible party" ("PRP") letter does not constitute a suit, once a court action is filed pursuant thereto, the insured becomes entitled to all defense costs retroactively, dating back to the date of the PRP letter).  We disagree.

It would seem that a 
pro forma
 lawsuit, which only serves to reduce to judgment by agreement of the parties a settlement to which the parties had already consented in an administrative proceeding, is but an extension or implementation of that administrative proceeding.  Consequently, to invoke coverage for the filing of a lawsuit already consented to in a settlement agreement in the underlying administrative action, where the outcome of that lawsuit is pre-ordained by that agreement, would contravene the thrust of the holding of 
Lapham-Hickey
, which precludes any duty to defend against administrative proceedings.  Once a consent decree is fully agreed upon in the underlying administrative settlement, a suit which is filed pursuant thereto as a mere formality provides nothing to defend upon which to invoke any duty to defend.  Although 
Lapham-Hickey
 did not expressly address this issue, we do not believe that in that case the court intended to extend the duty to defend to non-adversarial suits in which the insured had already fully agreed with the liabilities ultimately imposed by the court, which as a mere formality legitimatized the agreement prepared by the parties prior to the filing of the action.

In the instant case, Wausau avers in its brief that the consent decree was entered into and fully executed prior to the filing of the federal action, and that the decree was filed contemporaneously with the federal complaint.  Ehlco does not anywhere controvert these averments.  Moreover, the signature page of the consent decree bears the date of May 16, 1987, which purports to be well in advance of the filing of the federal action in March 1988.
(footnote: 2)  The consent decree, when agreed upon, contemplated the filing of a federal lawsuit in which the consent decree would be filed.  Thus, the entry into the consent decree prior to the filing of the federal suit completely neutralized the anticipated federal action and rendered it non-adversarial in nature.

There is nothing on the face of the decree that is inconsistent with the non-adversarial nature of the federal action in which it was contemporaneously filed.  The provisions of the decree wholly define and predetermine the full nature and extent of the judicial action to be taken pursuant to the filing of the lawsuit and the entry of the decree.  As noted, the consent decree provides in pertinent part as follows:

"This Consent Decree shall be lodged with the Court for a period of 30 days for public comment pursuant to the provisions of 28 C.F.R. §50.7 and Section 122(i) of the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat 1613 (1986)."

The decree further provided that

"the parties agree and the Court finds that settlement of these matters without further litigation is in the public interest and that the entry of this Decree is the most appropriate means of resolving these matters."

In addition, the consent decree contained penalties for violations of the decree to which the parties had stipulated.  The decree also provided that the federal court would maintain jurisdiction

"for the duration of this Consent Decree for the purposes of issuing such further directions as may be necessary or appropriate to construe, implement, modify, enforce, terminate, or reinstate the terms of this Consent Decree ***."

As is apparent from its face, the consent decree was fully executed prior to the filing of the federal action and was filed simultaneously with it.  Second, the role of the federal court was clearly limited and defined on the face of the consent decree to the future enforcement of the settlement if necessary, and did not call for any concurrent defense of the action by Ehlco.  Third, the decree provided its own stipulated penalties.  Fourth, the stated purpose of the federal action, as disclosed in the decree itself, was to prevent any further litigation, and to permit the statutorily required "public comment" on the terms of the settlement agreement.  Hence, the federal consent decree action was wholly non-adversarial, entered into by prior consent of the parties to implement an agreement negotiated and executed in the underlying prior administrative proceedings.

It is therefore apparent that Ehlco did not require any defense in the federal consent decree action, since that action was filed by agreement of the parties merely to reduce the settlement decree to an enforceable judgment pursuant to the prior agreement of the parties, and since the insured's liability in the lawsuit was a foregone conclusion, fully negotiated by the parties prior to the filing of the action.  We would further surmise that, if anything, the cost of attorney fees actually incurred in the federal consent decree action would at best be nominal, since every detail appears to have been fully orchestrated pursuant to the settlement reached at the administrative level prior to the filing of the implementational consent decree action.
(footnote: 3)
Ehlco would further urge that the decision of our Supreme Court in 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992) precludes our finding that the federal consent decree action here did not constitute a suit or therefore invoke Wausau's duty to defend.  We disagree.  In 
Outboard Marine
, the State of Illinois and the USEPA each filed suit in federal court in 1978 against Outboard Marine Corporation (OMC), the insured, alleging that in the course of its normal business operations it had contaminated waters including Waukegan Harbor and Lake Michigan.  Those suits sought to enjoin OMC from further contaminating those waters and to compel OMC to select and implement a safe and swift method of cleaning them up.  The governmental agencies ultimately moved for voluntary dismissal of those actions, which the federal district court granted without prejudice.  Thereafter, in October 1988, those agencies both filed new federal complaints against OMC, in which they made the same factual allegations as those set forth in their initial complaints, and in which they prayed for response costs and in addition damages under CERCLA.  In April 1989, the federal district court approved of and entered a consent decree which had been negotiated and entered into by OMC, the EPA and the State of Illinois.  Pursuant to that decree, OMC was required to make payments into a trust fund for the costs associated with the cleanup of the contaminated waters.

OMC tendered its defense of the underlying actions to its insurers pursuant to the provisions of certain comprehensive general liability insurance policies, but the insurers refused to defend, alleging that the underlying actions were not covered under the policies.  OMC therefore defended itself and eventually negotiated and entered into the aforementioned consent decree settlement, and then instituted its declaratory judgment action against its carriers.  In its declaratory suit, OMC sought a declaration that its insurance carriers had duties to defend and indemnify it in the underlying actions, and sought reimbursement for its underlying defense costs and liabilities.  The 
Outboard Marine
 court held in relevant part as follows:

"Liberty Mutual [one of OMC's primary carriers] initially asserts that the governmental agencies' 1988 complaints are not involved in this appeal and cannot be considered in determining whether the insurers had a duty to defend OMC.  However, it is clear from the record that the 1988 complaints were before the trial court when it ruled on OMC's motion for partial summary judgment and are, therefore, part of the record on appeal.  The 1988 complaints are the only complaints which specifically pray for response costs and 
damages
 pursuant to section 107 of CERCLA.  Therefore, these 1988 complaints clearly constitute 'suits seeking damages.'  Accordingly, we hold that, absent an applicable policy exclusion, Liberty Mutual had a duty to defend OMC and we affirm the appellate court in this regard."  
Outboard Marine
, 154 Ill. 2d at 112
, 607 N.E.2d at 1214.  (Emphasis supplied in original).

Ehlco would urge that this language from 
Outboard Marine
 regarding the underlying 1988 complaints in that case precludes us from holding that the federal action here was a non-adversarial "suit," insufficient to invoke Wausau's duty to defend.  In support, Ehlco has supplemented the record here with Liberty Mutual's (a defendant-insurer in 
Outboard Marine
) brief to our supreme court in the 
Outboard Marine
 case, in which Liberty Mutual argued that the consent decree settlement agreement involved in that case was filed simultaneously with the underlying 1988 federal complaints and that therefore, there was nothing for it to defend in the federal action.  Ehlco would appear to argue on the basis of the representations in that brief that since Liberty Mutual was ultimately found to have had a duty to defend in 
Outboard Marine
, the fact that a consent decree may be filed simultaneously with a federal action does not prevent such an action from constituting a "suit" sufficient to trigger a duty to defend.

However, the above-referenced language from the 
Outboard Marine
 decision is not susceptible to Ehlco's interpretation.  Despite the statements in Liberty Mutual's brief regarding the timing of the filing of the consent decree settlement in that case, nowhere does the 
Outboard Marine
 decision indicate or otherwise rely upon the date of the filing of the consent decree in that case.  Whatever the background facts and arguments consisted of in 
Outboard Marine
 (
i.e.
, as presented in the Liberty Mutual brief in that case), the precedential value of that case can only be gleaned from how the court there chose to present the facts and characterize the issues before it.  As is clear from the above-referenced passage, the court in 
Outboard Marine
 did not concern itself with the issue of whether the federal consent decree action involved in that case constituted a "suit" as that issue was raised and addressed in the later decision of 
Lapham-Hickey
 with respect to an administrative proceeding versus a court proceeding.  Rather, the 
Outboard Marine
 court was concerned with the issue of whether "damages" had been sought against OMC in the underlying actions as required by the policies in question in order to invoke Liberty Mutual's duty to defend.  As noted above, the 
Outboard Marine
 court distinguished between the 1978 federal actions against OMC which sought solely equitable relief, and the 1988 federal actions which sought monetary damages and thereby invoked Liberty Mutual's duty to defend.  Having distinguished 
Outboard Marine
, as previously discussed, it follows from the decision in 
Lapham-Hickey
 that a consent decree settlement memorialized in a federal lawsuit does not give rise to an independent duty to defend, unless, perhaps, it was shown that there was some complication in its implementation that knocked the consent decree action out of its fixed orbit around the settlement agreement, or that the federal lawsuit deviated from the consent decree and took on a life of its own.  Thus, since the USEPA's underlying proceedings against Hines with respect to the Mena, Arkansas site did not constitute a suit, we must conclude that no duty to defend arose which would have obligated Wausau to participate in Hines' defense with respect to that site.  See 
Lapham-Hickey
, 166 Ill. 2d 520, 655 N.E.2d 842.
(footnote: 4)
Wausau contends with respect to Ehlco's Mena claim that even if 
Lapham-Hickey
 would not apply to preclude coverage, coverage would nevertheless be precluded because of Ehlco's late notice.  Wausau also contends that notwithstanding our determination that the Wyoming action falls within the coverage provisions of the policy, Wausau would nevertheless have no duty to defend due to Ehlco's late notice with respect to that action.  Wausau urges that the trial court was in error in estopping it from asserting Ehlco's breach of the timely notice provisions in the subject policies by reason of Wausau's failure to undertake Ehlco's defense, since those provisions are conditions precedent to any coverage and not subject to estoppel.

The purpose of a notice requirement is to enable the insurer to make a timely and thorough investigation of a claim.  
INA Insurance Co. v. City of Chicago
, 62 Ill. App. 3d 80, 379 N.E.2d 34 (1978).  Notice provisions are considered valid conditions precedent to coverage, and should not be considered mere technical requirements for the convenience of the insurer.  See 
Kerr v. Illinois Central Railroad Co.
, 283 Ill. App. 3d 574, 670 N.E.2d 759 (1996) (stating that compliance with notice provision is a condition precedent to coverage and if breached, the insurer will not be liable under the policy); 
Industrial Coatings Group, Inc. v. American Motorists Insurance Co.
, 276 Ill. App. 3d 799, 658 N.E.2d 1338 (1995) (stating that the requirement of timely notice is a condition precedent of the policy).  See also 
Millers Mutual Insurance Ass'n v. Graham Oil Co.
, 282 Ill. App. 3d 129, 668 N.E.2d 223 (1996); 
American Country Insurance Co. v. Cash
, 171 Ill. App. 3d 9, 524 N.E.2d 1016 (1988); 
Equity General Insurance Co. v. Patis
, 119 Ill. App. 3d 232, 456 N.E.2d 348 (1983); 
INA Insurance Co.
, 62 Ill. App. 3d 80, 379 N.E.2d 34; 
City of Chicago v. United States Fire Insurance Co.
, 124 Ill. App. 2d 340, 260 N.E.2d 276 (1970).  Whether an insured complied with its contractual duty to notify its carrier of an occurrence is resolved by determining whether a reasonably prudent person would have foreseen a lawsuit and would have either contacted his attorney or his liability carrier.  
Graham Oil Co.
, 282 Ill. App. 3d 129, 668 N.E.2d 223; 
Industrial Coatings Group,
 276 Ill. App. 3d 799, 
658 N.E.2d 1338; 
Twin City Fire Insurance Co. v. Old World Trading Co.
, 266 Ill. App. 3d 1, 639 N.E.2d 584 (1993).  Prejudice to the insurer from late notice of an occurrence is only a factor to be considered in determining whether notice was reasonable.  
Graham Oil Co.
, 282 Ill. App. 3d 129, 668 N.E.2d 223.  Whether an insured has been given reasonable notice usually is a question for the trier of fact, and becomes a question of law for the court only when the facts are undisputed.  See generally 
University of Illinois v. Continental Casualty Co.
, 234 Ill. App. 3d 340, 599 N.E.2d 1338 (1992).

As noted, a liability carrier has a duty to defend an action which alleges a claim that potentially comes within the coverage of the policy, even where the facts ultimately show that no coverage is available.  
Outboard Marine Corp.
, 154 Ill. 2d 90, 607 N.E.2d 1204; 
Zurich Insurance Co.
, 118 Ill. 2d 23, 514 N.E.2d 150; 
Sundance Homes, Inc.
, 238 Ill. App. 3d 335, 606 N.E.2d 326; 
Western Casualty & Surety Co.
, 179 Ill. App. 3d 752, 534 N.E.2d 1066.  The breach of that duty will estop the carrier from arguing policy defenses to coverage in a later declaratory action brought against it.  
Murphy
, 88 Ill. 2d 444, 430 N.E.2d 1079; 
Peppers
, 64 Ill. 2d 187, 355 N.E.2d 24; 
M/A Com
, 187 Ill. App. 3d 358, 543 N.E.2d 228; 
Sims
, 43 Ill. App. 2d 184, 193 N.E.2d 123.

The first question presented here is whether a carrier which has failed to defend or reimburse its insured in an underlying action or to file a timely declaratory judgment action is estopped under the foregoing rule from arguing conditions precedent to coverage such as the requirement of timely notice.  Illinois courts are divided on this issue.  On the one hand, there is a line of cases which support Wausau's position that a carrier is not estopped from asserting that it had no duty to defend or to indemnify due to late notice since the giving of timely notice is a condition precedent to coverage.  See 
Industrial Coatings Group,
 276 Ill. App. 3d 799, 
658 N.E.2d 1338; 
M/A Com Inc. v. Perricone
, 187 Ill. App. 3d 358, 543 N.E.2d 228 (1989); 
Del Grosso v. Casualty Insurance Co.
, 170 Ill. App. 3d 1098, 524 N.E.2d 1042 (1988); 
City of Chicago v. United States Fire Insurance Co.
, 124 Ill. App. 2d 340, 260 N.E.2d 276 (1970); 
International Environmental Corp. v. National Union Fire Insurance Co.
, 860 F. Supp. 511 (N.D. Ill. 1994); and 
La Salle National Trust, N.A. v. Schaffner
, 818 F. Supp. 1161 (N.D. Ill. 1993).  See also D. Caswell and M. Warnick, The Illinois Insurer Estoppel Doctrine:  The Consequences of Wrongful Denial of the Duty to Defend, 7 Environmental Claims Journal 5 (Summer 1995) (stating that where an insurer fails to file a declaratory action or defend under a reservation of rights, it need not be estopped from introducing extrinsic evidence of the insured's breach of a condition precedent to coverage such as timely notice as a defense to any coverage in a subsequent coverage action).

On the other hand, there is a line of cases which appear to be aligned with Ehlco's position that due to its alleged failure to defend Hines or to file a timely declaratory action, Wausau is estopped from asserting any policy coverage defenses, including that of late notice.  See 
La Rotunda v. Royal Globe Insurance Co.
, 87 Ill. App. 3d 446, 408 N.E.2d 928 (1980); 
McFadyen v. North River Insurance Co.
, 62 Ill. App. 2d 164, 209 N.E.2d 833 (1965); 
Maneikis v. St. Paul Insurance Co.
, 655 F. 2d 818 (7th Cir. 1981); 
Petersen Sand & Gravel, Inc. v. Maryland Casualty Co.
, 881 F. Supp. 309 (N.D. Ill. 1995); 
and 
Attorney's Title Guaranty Fund, Inc. v. Maryland Casualty Co.
, No. 90 C 3916 (N.D. Ill. August 23, 1991).  See also 
Central Mutual Insurance Co. v. Kammerling
, 212 Ill. App. 3d 744, 
571 N.E.2d 806 (1991).  See generally S. Nardoni and J. Vishneski, The Illinois Estoppel Doctrine:  Illinois Courts Make it Costly for Insurers To Breach Their Duty To Defend, 8 Environmental Claims Journal 45 (Autumn 1995) (hereinafter, the title to this article will be referred to by the names of its authors, Nardoni and Vishneski).

Based upon our review of these authorities, we find those cases which support Wausau's view to be more persuasive.  Nardoni and Vishneski have articulated the rationale of Ehlco's line of cases, which would invoke estoppel to preclude the interposition of a late notice defense, as being an extrapolation of the general principal of estopping an insurer who breaches his duty to defend from then seeking to interpose defenses.  In order to preserve that rule, they would make no distinction between late notice defenses and other defenses to coverage.  They further state that to permit an insurer to refuse to defend its insured while conducting an inquiry into facts extrinsic to the underlying complaint regarding late notice would leave the insured unprotected while the insurer decides whether to provide a defense.  In support, the article states that

"[c]reating an exception to the rule for condition precedent-type defenses would destroy the effectiveness of the [estoppel] rule.  It would permit carriers to safely deny their duty to defend, without fear of estoppel, as long as they include a 'late notice' *** condition precedent defense in their denial letter.  This would instruct all insurance company claims representatives to include such defenses in their denial of coverage letters in every case.  The exception would swallow the rule whole."  Nardoni and Vishneski, The Illinois Estoppel Doctrine, at 56.

The better reasoned cases, however, would challenge these assertions.  The general rationale for the invocation of the estoppel rule is that it prevents an insurer who has breached the duty to defend provision in its policy from relying on other policy defenses in that insurance contract which it has already repudiated.  
Murphy
, 88 Ill. 2d 444, 430 N.E.2d 1079; 
Peppers
, 64 Ill. 2d 187, 355 N.E.2d 24; 
M/A Com
, 187 Ill. App. 3d 358, 543 N.E.2d 228; 
Sims
, 43 Ill. App. 2d 184, 193 N.E.2d 123.  However, where conditions precedent to coverage are involved, including the requirement to serve timely notice (see 
Kerr
, 283 Ill. App. 3d 574, 670 N.E.2d 759; 
Industrial Coatings
, 276 Ill. App. 3d 799, 658 N.E.2d 1338), the argument is reversed.  First, the insurance contract does not take effect without timely notice.  Second, the party in breach is the policyholder, not the insurer

Thus, it would be conceptually incoherent to permit estoppel to arise where a duty to defend may well not have been breached because of the prior breach by the insured of a condition precedent regarding the giving of timely notice.  The insured's breach of the timely notice provision, if proven, would preclude the vesting of any right in the insured to a defense and any correlative duty to defend on the part of the insurer.  In that regard, we note that the estoppel rule initially germinated in a context where the allegations of the underlying complaint were sufficient to invoke the possibility that the underlying cause of action, if proven, would fall within the coverage provisions of the policy.  
Murphy
, 88 Ill. 2d 444, 452, 430 N.E.2d 1079, 1083 ("The starting point of analysis under either the general rule of estoppel or the exception is the same-the allegations of the complaint"); 
Peppers
, 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28 ("In determining whether the insurer owes a duty to defend *** it is the general rule that the allegations of the complaint determine the duty"); 
Federal Insurance Co. v. Economy Fire & Casualty Co.
, 189 Ill. App. 3d 732, 735, 545 N.E.2d 541 (1989) ("In determining whether an insurer owes a duty to defend the insured, courts look to the four corners of the complaint brought against the insured").  However, the allegations in the underlying complaint against the policyholder would not ordinarily contain assertions pertaining to the timely notice issue, since the underlying complaint would not, and, under ordinary circumstances, could not, deal with matters pertaining to the insurability of the underlying tort defendant.  Rather, resolution of that issue would require a consideration of matters wholly extrinsic to the underlying complaint.  See D. Caswell and M. Warnick, The Illinois Insurer Estoppel Doctrine:  The Consequences of Wrongful Denial of the Duty to Defend, 7 Environmental Claims Journal 5 (Summer 1995).  Furthermore, where the question is whether the allegations in the underlying tort complaint fall within the coverage provisions of the policy, the facts proving or disproving coverage would ordinarily be revealed and established during the course of the trial of that action.  Not so those matters pertaining to timely notice, since the question of timely notice is irrelevant in the context of the underlying tort litigation.

Any concern that the Illinois estoppel rule will be vitiated by our holding ignores the fact that carriers would only escape the consequences of being estopped from contesting their duty to defend or pay the cost of defense if the court ultimately sustains their condition precedent defense based on late notice, a defense to which they then would have been clearly entitled.  Furthermore, the estoppel rule remains in full force and effect with respect to all other defenses.

The decisions in 
M/A Com Inc. v. Perricone
, 187 Ill. App. 3d 358, 543 N.E.2d 228 (1989) and 
Industrial Coatings Group, Inc. v. American Motorists Insurance Co.
, 276 Ill. App. 3d 799, 658 N.E.2d 1338 (1995) are wholly in point.  In 
M/A Com
, the insurer refused to defend the insured on late notice grounds.  Thereafter, the underlying tort plaintiff received a judgment against the insured and brought garnishment proceedings against the insurer, urging that the insurer was estopped from asserting late notice as a defense to payment under its policy because it had breached its duty to defend the insured.  The 
M/A Com
 court rejected that argument, stating that the insurer was not estopped from establishing that a breach of the subject policy's timely notice provision precluded any coverage.  In so holding, the 
M/A Com
 court stated as follows:

"The case at bar represents a departure from the typical policy coverage case exemplified by 
Sims
 [
Sims v. Illinois National Casualty Co.
, 43 Ill. App. 2d 184, 193 N.E.2d 123 (1963)].  This case involves an alleged breach of contract not by the insurer, but rather by the insured.  In our estimation, this difference does not affect the proposition of law to be applied.  The essential proposition of law stated in 
Sims
 is that an insurer which has breached its duty under the policy to defend the insured is estopped from later asserting any provision of the policy as a defense.  That proposition is based upon the general principle of contract law that a party which has breached the terms of a contract may not rely on other terms of the same contract.  [Citations.]  By estopping the insurer from raising the affirmative defense [of late notice], the trial court never reached the issue of whether the insured did in fact breach the policy and thereby relieve the insurer of its duty to defend.  The court apparently accepted the plaintiff's position that the insurer is in all cases obligated to either defend under a reservation of rights or seek a declaratory judgment as to the scope of its duty to defend.  The duty to defend, although broad, is not boundless.  The doctrine of estoppel arises only where a duty to defend exists and has been breached by the insurer.  It does not prevent the insurer from raising the issue of whether it did in fact breach a duty to defend its insured.
  
M/A Com
, 187 Ill. App. 3d at 361-62, 543 N.E.2d at 231
.

As in 
M/A Com
, in 
Industrial Coatings
, the insurer refused to defend its insured in an underlying USEPA potentially responsible party (PRP) action and failed to file any declaratory judgment action on late notice grounds.  The insured ultimately filed a declaratory judgment action almost three years after it first sent notice to the insurer of the underlying matter.  Thereafter, the insurer filed a motion for summary judgment in which it urged that despite its inaction and refusal to defend, it should not be estopped from asserting its late notice defense as a bar to defense or indemnification coverage.  The trial court granted that motion.  The 
Industrial Coatings
 court affirmed, stating that in order for estoppel to apply, the insurer must first be found to have had a duty to defend, and then must be found to have breached that duty.  The 
Industrial Coatings
 court cited to 
M/A Com
 in support of its conclusion that if an insurer could show that the insured breached its duty to provide timely notice, it would be relieved of its duty to defend and estoppel would not apply.  Accord 
Del Grosso v. Casualty Insurance Co.
, 170 Ill. App. 3d 1098, 524 N.E.2d 1042 (1988) (holding that an insurer should not be estopped from raising the late notice issue although it had neither defended the insured in the underlying lawsuit nor filed a declaratory judgment action.).

Based upon the rationale and holdings in 
M/A Com
 and 
Industrial Coatings
, here, Wausau should have been given the opportunity to establish that its insured breached a condition precedent to coverage.
(footnote: 5)  As noted by the court in 
M/A Com
, the duty to defend is not boundless.  Just as an insurer that breaches the terms of its policy should not be permitted to rely on other terms of the same policy to deny coverage, an insured that breaches a condition precedent to policy coverage should not be permitted to invoke the coverage provisions of that same policy.  See also 
United States Fire Insurance Co.
, 124 Ill. App. 2d 340, 260 N.E.2d 276; 
International Environmental Corp.
, 860 F. Supp. 511; 
Schaffner
, 818 F. Supp. 1161.
(footnote: 6)  Hence, the trial court erred in precluding Wausau from arguing whether the insured had breached the notice provisions of the applicable policies with respect to the underlying Wyoming action and, for that matter, with respect to the Mena action as well.
(footnote: 7)
[Nonpublishable material under Supreme Court Rule 23 omitted.]

For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed and remanded for proceedings in accordance herewith.

Reversed and remanded.

COUSINS, P.J. and LEAVITT, J., concur. 

FOOTNOTES
1: 
This opinion is only an excerpt of a memorandum decision running 95 pages in length.  In order to comply with appellate court page limitations specified by revised Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), we have omitted in excess of 15 pages from our statement of facts, and in excess of 50 pages of discussion involving more than 18 separate issues.  Consequently, the published discussion portion of this decision only addresses the following two issues:  (1) the question of Wausau's duty to defend in the underlying Mena, Arkansas proceedings under the recent decision of our supreme court in 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co
., 166 Ill. 2d 520, 655 N.E.2d 842 (1995); and (2) whether Wausau is precluded from interposing a defense predicated upon the delayed notification of claims by its insured.

The unpublished portion of this memorandum decision addresses, among other things, the subject matter jurisdiction of this court on appeal in light of the contention that the judgment at the trial level lacked finality; whether the allegations of the underlying Union Pacific complaint in Wyoming were sufficient to invoke a duty to defend; whether the facts support the contention that the carrier was served with late notice; the impact of a non-waiver agreement upon the rule that a breach of a duty to defend will estop the carrier from invoking defenses to coverage; the impact of the filing of a declaratory judgment action upon the foregoing estoppel rule, including the question as to when the declaratory judgment action must be filed to preclude invocation of the estoppel rule; whether prejudice is required to invoke estoppel; when the invocation of estoppel can, if at all, permit recovery in excess of policy limits; the sufficiency of Ehlco's tender of its defense; as well as numerous other more incidental matters.

Because of these omissions, there may be gaps in the continuity of the aforementioned published excerpts.  However, a full, unabridged text of this decision is on file with the clerk of this court under Docket No. 95-1337.

2: 
The parties did not refer to these dates, but no one contravenes the assertion by Wausau that the execution of the consent decree preceded the filing of the federal action and that the consent decree was filed contemporaneously with that action.

3: 
Ehlco also apparently contends that Wausau is estopped from denying that a suit was filed in the underlying Mena proceedings and from denying that therefore, no duty to defend was invoked since, according to Ehlco, Wausau made statements in its pleadings to the contrary.  In support, Ehlco refers to Wausau's third-amended complaint, wherein Wausau stated that the USEPA filed suit against Hines in 1988 in Arkansas.  However, this statement cannot reasonably be construed as an admission by Wausau that the USEPA administrative proceedings invoked Wausau's duty to defend, nor, for that matter, as an admission that the 1988 federal consent decree action invoked Wausau's duty to defend.

4:
Since we conclude that Wausau's duty to defend was not invoked by the underlying USEPA administrative proceedings or the federal consent decree action against Ehlco, we need not address Ehlco's contention that under the aforementioned 
Detrex
 decision, the filing of the federal action entitled them to defense costs both for the defense of that action and retroactively, for the defense of the USEPA administrative proceedings leading up to that action.  Under the holding in 
Detrex
, the question as to whether an insured would be entitled to such a retroactive payment of defense costs would not arise unless the insurer's duty to defend has been invoked in the first instance.

5:
We note at this juncture that the same reasoning with respect to conditions precedent and timely notice also applies to Wausau's interposition of the "suit" defense under 
Lapham-Hickey
.  Consequently, we agree with Wausau's contention that the trial court erred in striking its allegations regarding the suit issue from Wausau's third amended complaint.  As noted, in its November 7, 1994 order, the trial court granted Ehlco's motion to strike all of the new counts in that complaint, including the suit issue, apparently because the court had found that Wausau had breached its duty to defend, and was therefore estopped from arguing any policy defenses.  The trial court also stated in striking those claims that it agreed with the arguments in Ehlco's motion to strike, which as noted alleged that Wausau's new claims were unsupported by allegations of fact.  However, the trial court's estoppel of Wausau to argue the suit issue was erroneous since, as with the timely notice issue, no duty to defend is triggered in the first instance unless a suit has been filed against the insured.  See generally 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co
., 166 Ill. 2d 520, 655 N.E.2d 842 (1995); 
Fruit of the Loom, Inc. v. Travelers Indemnity Co.,
 284 Ill. App 3d 485, 672 N.E.2d 278 (1996).  Moreover, the suit defense alleged in the third-amended complaint stated sufficient facts to withstand a motion to strike.  As noted, in its complaint, Wausau specifically set forth the facts regarding the 1982 USEPA letter informing Hines that it was potentially responsible for the Mena cleanup, and further specified that in  1988, the USEPA filed its consent decree action in federal court in Arkansas.  Wausau then alleged that under these facts, it had no duty to defend because no suit had been filed as defined by its policies.  Wausau could not have provided more complete allegations on this issue.

6: 
Ehlco would urge in particular that the decision in 
Central Mutual Insurance Co. v. Kammerling
, 212 Ill. App. 3d 744, 571 N.E.2d 806 (1991) supports its position that Wausau must be estopped from arguing the late notice issue.  We disagree, as that case is distinguishable.  In 
Kammerling
, the insurer received the insured's tender of defense and notified the insured that it was reserving its rights due among other reasons to the late notice of the loss.  The insurer indicated that it would proceed with a declaratory judgment action against its insured and explicitly recognized its obligation to provide a defense until that declaratory action had been resolved.  The carrier further indicated that it would file an additional appearance on behalf of the insured in the underlying matter (the insured was being represented by another carrier).  However, the carrier did not file its declaratory judgment action until several months had passed, and in the interim, never filed an appearance for the insured or participated in any way in the underlying defense.

On appeal, the 
Kammerling
 court held that the insurer was estopped from asserting a late notice defense due to "[t]he peculiar facts of this case" (
Kammerling
, 212 Ill. App. 3d at 749, 571 N.E.2d at 809
), insofar as the insurer acknowledged its duty to defend under a reservation of rights and in fact indicated that it would file a declaratory judgment action and honor its defense obligations until the resolution of that action.  Unlike in 
Kammerling
, here, Wausau did not acknowledge its duty to defend, nor did it represent that it would file a declaratory judgment action or, for that matter, file an appearance on behalf of its insured and otherwise participate in the underlying defense.

7:
Wausau also contends that the cooperation, mitigation and voluntary payments clauses in its policies are conditions precedent to coverage which it should not have been estopped from arguing and which should have precluded judgment on the pleadings.  We disagree.  We first note that in making this argument in its brief, Wausau provides no factual basis for asserting that Ehlco failed to cooperate with Wausau, to mitigate the underlying claims made against it, or that Ehlco voluntarily made any payments which it was not legally required to make.  In addition, Wausau has not cited to any cases which support its proposition that those clauses are conditions precedent to coverage.  The one case which Wausau did cite in support of this argument, 
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 579 N.E.2d 322 (1991), is inapposite.  That decision merely states with respect to the cooperation clause that under its auspices, an insured must disclose to its insurer the contents of communications which the insured had with defense counsel representing them on a claim for which their insurer had the ultimate duty to satisfy.  Because in making this argument Wausau has failed to apply its legal conclusions to the facts of this case and has merely cited to one irrelevant decision in support of this argument, it is waived.  See, 
e.g.
, Illinois Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)); 
In re Marriage of Winton
, 216 Ill. App. 3d 1084, 576 N.E.2d 856 (1991) (where party cited to only one case which was inapposite in support of its argument, the court held that the argument was waived under Rule 341(e)(7)).