**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**The STROH BREWERY COMPANY,**
Defendant.

No. 1:95–CV–0287.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 22, 1998.

652

David C. Campbell, James M. Hinshaw, Bingham Summers Welsh and Spilman, Indianapolis, IN, Timothy M. Thornton, Jr., Nelsen Thompson Pegue and Thornton, Santa Monica, CA, for Federal Insurance Company, plaintiff.

Kevin K. Fitzharris, Gary J. Rickner, Cathleen M Shrader, Barrett and McNagny, Fort Wayne, IN, Dwight B. Palmer, Jr., Stanley C. Nardoni, Bell Jones Quinlisk & Palmer, Chicago, IL, for G. Heileman Brewing Company, defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

Before the Court is a Motion for Further Relief Pursuant to 28 U.S.C. § 2202, which the Defendant, the Stroh Brewery Company ("Stroh"), filed February 2, 1998. Plaintiff, Federal Insurance Company ("Federal"), responded on February 20, and Stroh replied on March 13. In its Order of May 22, 1998, the Court found that Federal had not waived the defenses which it properly raised in District Court, but which neither the District Court nor the Circuit Court resolved. The Court ordered further briefing on the issue of the extent to which the Circuit Court's estoppel finding barred Federal from asserting these defenses. Federal and Stroh filed their Supplemental Briefs on June 11. Federal's Response Brief came in on June 22, and Stroh's on June 25.

The Court then scheduled a hearing for September 24, 1998, on two issues: (1) whether, under Indiana law, the Seventh Circuit's finding of estoppel in *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 571 (7th Cir.1997), reaches Federal's defense of late notice; and (2) whether, under Indiana law, Stroh may recover its fees and costs expended in defending the declaratory judgment action brought by Federal. The Court also asked the parties for their views on certifying these issues to the Indiana Supreme Court. Federal and Stroh filed Supplemental Briefs on October 30 and Response Briefs on November 13. The Court is now prepared to rule on the matters raised by Stroh's Motion for Further Relief.

For the reasons that follow, the Court GRANTS Federal a credit of $49,379.43 for the prejudgment interest that accrued on Stroh's principal while proceedings were stayed due to Heileman's bankruptcy; pursuant to 28 U.S.C. § 2202, the Court ORDERS Federal to pay to Stroh: principal of $1,633,-586.73; interest to December 1, 1997, of $226,796.88 and interest of $358.05 for each day from December 31, 1997 to the day this judgment is entered; and $105.00 charged to appeal this case. The Court DENIES Stroh's petition for fees and costs expended to defend Federal's declaratory action.

## DISCUSSION

### Facts

This action began on August 29, 1995, when Federal filed a Complaint for Declaratory Relief and Reimbursement, seeking a declaration that it owed no duty to defend or indemnify Stroh's predecessor in interest, the Heileman Brewing Company ("Heileman") in the *Calumet v. G. Heileman Brewing Co.* action, Northern District of Indiana, Hammond Division, Case No. 2:94CV165JM. In that action, Calumet alleged that Heileman discriminated in the price it charged Northern Indiana beer wholesalers who purchased beer from Heileman in smaller quantities as opposed to those who purchased in larger quantities. Heileman was insured under Federal's commercial umbrella liability policy with limits of 20 million dollars per occurrence. Coverage A of the policy applied to claims above the limits of the underlying commercial general liability policy written by Employers Insurance of Wausau. Coverage B afforded Heileman primary liability insurance with no deductible and included a duty by Federal to defend suits brought against Heileman. Heileman stipulated that the Wausau policy did not cover the claims presented to Federal, so the question before the Court was whether Federal was liable for the *Calumet* suit under coverage B of its policy.

On January 30, 1996, this Court granted Federal's Motion for Judgment on the Pleadings and denied Stroh's Motion for Judgment on the Pleadings. The Court found that there was no coverage under Federal's insurance policy because (1) "discrimination" did not include "price discrimination," and (2) Heileman's claim was excluded under the exception for discrimination effected "with the knowledge and consent of the insured." But on September 19, 1997, the Seventh Circuit reversed this Court, ruling in favor of Stroh and against Federal on both issues. *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir.1997) (Flaum dissenting). The Seventh Circuit held that Federal's policy covered Heileman for the price discrimination alleged in the underlying *Calumet* suit, that the exception did not bar coverage, and that Federal had consequently breached its duty to defend. The Circuit Court also held that Federal's delayed and wrongful refusal to honor its insuring clause estopped Federal from recourse to its exclusions.

In its Motion for Further Relief, Stroh claimed that Federal refused to pay anything other than the Bill of Costs awarded Stroh as the winning party on appeal, and sought that this Court: (1) direct Federal to pay Stroh the principal sum of $1,633,586.73, which represents Stroh's legal and settlement expenses in the *Calumet* suit (Stroh's Brief of Feb. 2 at 2); (2) direct Federal to pay Stroh's prejudgment interest of $276,176.31 plus daily interest of $358.05 from December 31, 1997, to the entry of this Court's order (*id.* at 3–4); (3) award Stroh declaratory action fees and costs with Stroh to submit its supporting invoices hereafter (*id.* at 5–6); (4) pursuant to Fed.R.App.P. 39(e), direct Federal to pay Stroh the $105.00 charged to make the appeal (*id.* at 6); and (5) award Stroh any other additional relief this Court deemed proper (*id.*).

Federal, however, maintained that there remained pending several coverage defenses which had not been ruled upon either by this Court or by the Court of Appeals. These were: (1) whether Stroh is barred from recovering the loss due to the *Calumet* suit because Heileman's practice of price discrimination began prior to the commencement of coverage provided in the insurance policy (Response of Feb. 20, 3–4); (2) whether Heileman's late tender precludes coverage (*id.* at 4); (3) whether the fees and costs incurred prior to Heileman's tender are cov-

ered (*id.* at 4–5); and (4) whether Stroh is entitled to prejudgment interest accrued while Heileman was in bankruptcy (*id.* at 5–6). Federal also raised a fifth issue, whether Federal is entitled to a setoff. Stroh argued that Federal abandoned and waived these defenses when it did not raise them on appeal. Reply of March 13, 5–6.

The Court, in its Order of May 22, 1998, decided that Federal did not waive its other defenses by failing to argue them on appeal. The Court then instructed the parties to brief the question of whether Federal is nevertheless barred from recourse to its other defenses because of the Seventh Circuit's finding of estoppel in *Federal v. Stroh.*

**Stroh's Petition for Further Relief**

28 U.S.C. § 2202 provides, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have ben determined by such judgment." Stroh resorts to this statute because Federal has refused to provide Stroh with the monetary relief Stroh claims as a result of the Seventh Circuit's ruling in *Federal v. Stroh.*

**Estoppel**

██ The Seventh Circuit's decision in *Federal v. Stroh* is a mandate which this Court must follow. "A trial court must implement both the letter and spirit of the [appellate court's] mandate ... upon remand [the trial court] may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision...." *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949–50 (3d Cir. 1985) (citations omitted); *Law v. Medco Research, Inc.* 113 F.3d 781, 783 (7th Cir.1997). In *Federal v. Stroh,* the Seventh Circuit estopped Federal from asserting its exclusions against coverage. 127 F.2d at 571. Federal, however, claims that the Seventh Circuit's finding of estoppel does not bar Federal from asserting the defenses which the Circuit Court did not rule on, including its defenses of prior loss, late notice, pretender fees and costs, prejudgment interest accrued during bankruptcy, and setoff. Response of Feb. 20 at 3–6. Stroh contends that the estoppel finding does indeed bar the assertion of vir-

tually all of Federal's defenses. Reply of March 13 at 5–6. To follow the Circuit's mandate, this Court must decide whether the estoppel finding reaches the defenses Federal has advanced.

Here is what the Seventh Circuit said in regard to estoppel:

We now consider whether reliance on the exclusion must be rejected on other grounds as well. Heileman argues that because Federal delayed six months before notifying Heileman of its wrongful decision to decline to defend, Federal now should be barred from denying coverage based on an exclusion. *See Indiana Ins. & Co. v. Ivetich,* 445 N.E.2d 110, 112 (Ind.Ct.App. 1983) ("when an insurer induces the insured to effect self-help to protect himself, it cannot then hide behind the language of the insurance policy to avoid its duty to defend or insure.") (citing *American Family Mut. Ins. Co. v. Kivela,* 408 N.E.2d 805 (Ind.Ct.App.1980). In *Ivetich* the insurance company refused to pay a claim on grounds that the claims alleged were not covered. Similarly, in *Kivela* the insurer denied both coverage and a duty to defend. Because the insurance companies in both cases wrongfully denied coverage, the Indiana courts held that the insurer could not then "hide behind the language of the contract in an attempt to avoid its duty to insure." *Id.* In other words, choosing to deny coverage based on non-coverage by the insuring clause, thus leaving the insured to fend for itself, bars the insurer from recourse to its exclusions. Thus, regardless of whether the exclusion would apply in another circumstance, Federal may not now rely on it.

*Federal,* 127 F.3d at 571. From the passage above, it appears that the Circuit based its finding of estoppel on two grounds: (1) Federal's wrongful decision not to defend Heileman, and (2) Federal's six month delay in informing Heileman of its wrongful decision to deny coverage and defense.

Federal argues, "The rule in Indiana is that an insurer that breaches the duty to defend runs the risk of being collaterally estopped to later challenge findings made in

the underlying action. *Progressive Cas. Ins. Co. v. Morris,* 603 N.E.2d 1380, 1383 (Ind.Ct. App.1992) . . .; *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897 (Ind.Ct.App.1992)." Supplemental Brief of June 11 at 1. Federal appears to regard the appellate decision of *Federal v. Stroh* as the "underlying action." While admitting it is unable to argue the particular coverage issue resolved by the Seventh Circuit, Federal argues it could raise its other defenses because the Circuit's failure to decide them means that Federal is not collaterally estopped from asserting them. *Id.* at 10.

The appellate proceeding, however, is not the underlying action from which collateral estoppel may arise. The underlying action, as Stroh points out, would be the *Calumet* action, but neither the Seventh Circuit nor this Court could apply collateral estoppel from that action because it resulted in a settlement before any trial could resolve the issues of coverage or make any findings of fact. Response Brief of June 25 at 2. *Federal v. Stroh* is, in fact, part of the direct history of the case that is now before the Court, and its determinations are the law of the case. The reason Federal might not be able to assert its other defenses is not collateral estoppel, but the Seventh Circuit's estoppel ruling, which constitutes law of the case. Whether Federal may assert its other defenses at this point does not depend on whether the Seventh Circuit addressed these other defenses, but rather depends on whether the Seventh Circuit's estoppel finding bars Federal from asserting them.

Federal also argues:

Late response by an insurer to a tender of defense from its insured . . . would give rise to an estoppel only rarely under special circumstances. To establish estoppel an insured must show prejudice. *Protective Ins. Co. v. Coca–Cola Bottling Co.,* 423 N.E.2d 656, 662 (Ind.App.1981) ("only where the insured is prejudiced as a result of the unreasonable delay is the insurer estopped to assert noncoverage").

Supplemental Brief of June 11 at 6. With this argument, however, Federal appears to be relitigating a matter already decided by the Seventh Circuit. The Circuit has already made a finding of estoppel based upon Federal's late response and wrongful denial of defense. If Federal wishes to argue that Heileman was not sufficiently prejudiced by Federal's delay in wrongfully denying coverage to warrant a finding of estoppel, the proper forum for that argument is the Seventh Circuit. It is not for this Court to revisit that aspect of the case. Once again, Federal misconceives the question posed by the Court. The Court did not ask whether the Seventh Circuit correctly interpreted Indiana law or was right or wrong in finding estoppel. Rather, the question was, given the Circuit's finding of estoppel, to what extent does that finding bar Federal from asserting any or all of its defenses. Order of May 22, at 13.

Federal makes yet another argument which concerns the Indiana cases the Seventh Circuit cites in arriving at its estoppel finding. These are *Indiana Ins. & Co. v. Ivetich,* 445 N.E.2d 110, 112 (Ind.Ct.App. 1983) and *American Family Mut. Ins. Co. v. Kivela,* 408 N.E.2d 805 (Ind.Ct.App.1980). In both cases, the insurers denied coverage and defense to their insureds. These denials induced the insureds to settle the claims against them. In both cases the insurers were judged to have wrongfully denied coverage. In *Kivela,* the insurer argued that it was not required to pay the settlement because the settlement did not make the insured legally obligated to pay as required in the policy. 408 N.E.2d at 811. In *Ivetich,* the insurer similarly argued it was not required to pay the settlement because the insured failed to comply with certain conditions precedent set out in the policy requiring that the insured incur a judgment or obtain the agreement of the insurer before settling. 445 N.E.2d at 112. Federal argues that both insurers "attempted to use the very conduct they had induced [by their wrongful denials] as a basis to escape coverage. This is clearly not the case here as to Federal's other defenses. None of [Federal's] defenses were created by Federal's denial or alleged delay in denying coverage." Supplemental Brief of Nov. 13 at 8–9.

In *Kivela* and *Ivetich,* Indiana courts decided that an insurance company may be

estopped from using contractual defenses based upon conduct of the insured when the insurer itself induced such conduct by a wrongful denial of coverage. However, these cases do not limit the application of estoppel to those defenses which an insurer's wrongful denial of coverage may create. In the instant case, the Circuit Court found estoppel in response to Heileman's argument that Federal should be barred from denying coverage due to its six-month delay in notifying Heileman of its wrongful decision not to defend. *Federal*, 127 F.3d at 571. *Protective Ins. Co. v.. Coca–Cola Bottling Co.*, 423 N.E.2d 656 (Ind.Ct.App.1981), a case which both parties cite, states that estoppel may be found in precisely this situation: "The failure of an insurer to disclaim liability or deny coverage as soon as is reasonably possible after a demand to defend has been made may result in ... estoppel." *Protective* at 661. Furthermore, *Protective* does not limit the reach of an estoppel finding to defenses which an insurer's wrongful denial has created. On the contrary, *Protective* indicates, " 'The doctrine[ ] of ... "estoppel" extend[s] to practically every ground upon which an insurer may deny liability.' ... It is well-established that the doctrine[ ] of ... estoppel extend[s] to any ground upon which liability can be denied." *Id.* (quoting from *Travelers Ins. Co. v. Eviston*, 110 Ind.App. 143, 37 N.E.2d 310, 314 (1941)).

The Seventh Circuit concluded that in Indiana, an insurer who wrongfully denies coverage "cannot hide behind the language of the contract in an attempt to avoid its duty to insure. In other words, choosing to deny coverage based on non-coverage by the insuring clause, thus leaving the insured to fend for itself, bars the insurer from recourse to its exclusions. Thus, regardless of whether the exclusion would apply in another circumstance, Federal may not now rely on it." 127 F.3d at 571. The Court believes that in using the "cannot hide behind the language of the contract" language, the Seventh Circuit intended to estop federal from using its contractual defenses of which the exclusion to coverage then under discussion was the immediate example. An exclusion in an insurance policy is a "provision which eliminates coverage where were it not for the exclusion, coverage would have existed." BLACK'S LAW DICTIONARY (6th ed.1990). This definition may include many contractual provisions upon which a defense against coverage may be based which are not specifically labeled "exclusions" in the insurance contract. Stroh makes the point that "[t]he estoppel finding cannot be confined to exclusions because the provision the Seventh Circuit treated is not in the exclusions section of Federal's policy. (Federal Policy at pages 6–10 of 21.)" Supplemental Brief of June 11, at 3. Indeed, the Circuit applied estoppel to what the insurance contract identifies as an "exception" to coverage for personal injury due to humiliation or discrimination, rather than an "exclusion." Federal Policy, 18. It is the case, however, that the Seventh Circuit used the term "exclusion" interchangeably with "exception" in reference to the limitations the Policy placed on discrimination coverage, e.g., "We must now consider whether reliance on the *exclusion* must be rejected on other grounds as well." *Federal*, 127 F.3d at 571 (emphasis added). Nevertheless, the fact that the Seventh Circuit estopped Federal on what the insurance contract itself refers to as an exception to coverage implies that the estoppel reaches more than what the insurance contract designates as an exclusion.

In the case law of the Seventh Circuit, most statements on this subject indicate that an insurer who breaches the duty to defend is estopped from asserting "exclusions." Some formulations of the rule, however, suggest that such an insurer is estopped from using any contractual defense. *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 821 (7th Cir.1981), for example, states, "This equitable estoppel is based on the principle that 'the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, ... when it has already breached the contract by violating the provisions inuring to the benefit of the insured ...' " *Quoting Sims v. Illinois Nat. Cas. Co.*, 43 Ill.App.2d 184, 197, 193 N.E.2d 123, 129 (1963). Understanding the Seventh Circuit's estoppel finding to bar Federal from asserting its contractual defenses would accord well with Indiana law as

indicated in *Protective*, that estoppel extends to practically every ground upon which an insurer may deny liability. *Protective*, 423 N.E.2d at 661.

The Court therefore concludes that the Seventh Circuit's finding of estoppel reaches all of Federal's contractual defenses.

### Estoppel and Federal's Defenses of Prior Loss, Pretender Fees and Costs, and Setoff

Because the Court has concluded that the Seventh Circuit's finding of estoppel reaches all of Federal's contractual defenses, the Court must examine Federal's defenses and determine whether they are contractual or not.

■ Federal argues that there is no coverage because Heileman's offense began to take place before Federal's December 31, 1992, policy inception.[1] Federal's Opposition to Further Relief, Feb. 20, at 4. The Insurance Policy indicates that Federal will pay "damages ... when liability is ... assumed by the insured under an insured contract because of personal injury ... to which this coverage applies, caused by an offense committed during the policy period." Policy, page 4 of 21. The Declarations Page indicates that the policy period began on December 31, 1992. Federal's "prior loss" defense, then, is contractual, so that Federal is barred from using it. Stroh's Supplemental Brief of June 11, at 8–9.

■ Federal argues that there is no coverage for Heileman's defense costs that were incurred before Heileman tendered the case to Federal. Heileman incurred expenses defending the *Calumet* suit from its filing on June 16, 1994, until Heileman tendered the case on March 7, 1995. Federal's Opposition Brief of February 20, at 5. Federal's defense is based upon the voluntary payments provision in the "Conditions" section of Federal's policy, which requires that the insured, "not, unless we agree, incur any expense or make any payment other than for first aid. If you

do, those expenses will be at your own cost." Page 11 of 21. This defense, then, is also based on language from the Contract. Federal is estopped from using it. Stroh's Brief on Estoppel of June 11, at 10–11.

■ Federal argues that it is entitled to a setoff of any money paid to Heileman from any other insurer, including $325,000 paid by the Westchester Fire Insurance Company in settlement of a claim for coverage with regard to the *Calumet* suit. Opposition Brief of February 20, at 7. In its Brief on Estoppel, Stroh argues that the only possible basis Federal has to support setoff is the language of its insurance contract. Estoppel Brief of June 11, at 11. The Other Insurance section of the policy states, "If other insurance applies to claims covered by this policy, the insurance under this policy is excess and we will NOT make any payments until the other insurance has been used up." Policy, 13. Stroh further argues that the collateral source rule entitles Stroh to collect from more than one insurer when premiums are paid for multiple policies.[2] At 10.

In its October 30 Brief at 10, Federal claims that Indiana's collateral source rule statute was created to preclude an injured party from recovering more than once from all applicable sources. But Stroh, in its Response of November 13 at 11–12, points out that this statute in fact forbids the use of any evidence of "insurance benefits for which the plaintiff [claimant] or plaintiff's family have paid for directly." IAC § 34–44–1–2(1)(B). Stroh reasons that since Heileman paid well over $100,000 in premiums for its Westchester policies, Federal may not use the Westchester settlement to reduce Stroh's recovery from Federal. *Id.*

The collateral source rule applies in cases of personal injury. BLACK'S LAW DICTIONARY (6th ed.). Indiana's statute expressly applies to personal injury and wrongful death. IC § 34–44–1–2. The instant case is not a personal injury or wrongful death claim, but

---

[1] The Court acknowledges Stroh's correction that Federal does not seek apportionment of any part of the loss that may fall outside Federal's policy period, but rather claims the entire loss is outside its policy period. Brief on Estoppel of June 11, at 8.

[2] "Under this rule, if an injured person receives compensation for his injuries from a source wholly independent of the tortfeasor, the payment should not be deducted from the damages which he would otherwise collect from the tortfeasor." BLACK'S LAW DICTIONARY (6th ed.).

rather a declaratory judgment action to construe an insurance contract. However, if the collateral source rule or the Indiana collateral source statute nevertheless applies, it favors Stroh in that either would forbid, rather than permit, evidence of insurance benefits that may support a setoff. If neither the rule nor the Indiana statute applies, Federal has still failed to present any authority other than its contract to support a setoff. It appears, then, that Federal's defense of setoff is also exclusively based on contractual language. Federal is estopped from defending itself on that basis.

## The Bankruptcy Credit Defense

■ Federal also advances a bankruptcy credit defense by which it claims a credit for interest accrued during the period in which the appeal was stayed on account of Heileman's bankruptcy. Opposition Brief of Feb. 20, at 6. Heileman filed for bankruptcy on April 3, 1996. On May 3, 1996, Heileman moved for a stay of its appeal from the District Court's ruling. The stay was granted on June 7, 1996, and was not lifted until October 24, 1996. Federal argues that it should not pay the interest that accrued during this period of delay caused by Heileman, citing *Galloway v. Methodist Hospitals, Inc.*, 658 N.E.2d 611, 614 (Ind.Ct.App.1995) (affirming trial court's refusal to award prejudgment interest on quasi-contract liability due to hospital's delay in providing itemized invoices). *Id.* Stroh acknowledges that this defense does not appear to be based on the language of the insurance contract. Estoppel Brief of June 11, at 7. Stroh nevertheless argues that Federal should be equitably estopped from having this credit because the Insuring Agreement states in its Conditions section, "Bankruptcy or insolvency of the insured will not relieve us of any of our obligations under this policy." *Id.*; Policy at 10. However, with this defense, Federal is not arguing for relief from an obligation. Rather, Federal's bankruptcy defense assumes the obligation but seeks to suspend part of it on account of a delay for which it claims it was not responsible. The defense, then, is not based on the language of the contract, and if Federal's wrongful denial did not cause the delay, it should not be equitably estopped from using it.

■ Stroh indicates that Federal's wrongful late disclaimer of coverage contributed to Heileman's bankruptcy. Reply of March 13, at 9. Federal's denial of coverage occurred in September, 1995. Heileman applied for bankruptcy on April 3, 1996, after the District Court rendered its first opinion against Heileman on January 30, 1996. Federal had no control over Heileman's decision to file for bankruptcy or the length of time necessary to complete the bankruptcy proceedings. Because of the intervening decision of this Court which may have influenced Heileman's decision to file for bankruptcy, the length of time between Federal's denial and Heileman's filing, and the fact that Federal had no control over the decision to file for bankruptcy, the Court finds the connection between Federal's wrongful denial and Heileman's bankruptcy filing too tenuous to qualify as a causal link. The Court concludes that this defense has merit and that Stroh is not entitled to prejudgment interest that accrued between June 7, 1996, and October 24, 1996.

## The Late Tender Defense

Federal asserts that it may decline coverage because Heileman gave late notice to Federal on the *Calumet* suit. (Opposition Brief of Feb. 20, at 5). Calumet filed its suit against Heileman on June 16, 1994, but Heileman did not tender the matter to Federal until March 7, 1995. The Insurance Policy, in the section entitled, Conditions: Duties in the Event of an Occurrence, requires that the insured notify the insurer, "as soon as possible of any occurrence which may result in a claim if the claim may involve this policy or any Scheduled Underlying Party." (Page 11 of 21). Since this defense is based on contractual language, the Seventh Circuit's finding of estoppel seems to bar this defense as well. Estoppel Brief of June 11, at 9–10.

■ The Court, however, ordered the parties to file supplemental briefs to comment upon cases from Illinois which suggest that late notice, though a contractual defense, is nevertheless not subject to estoppel. Order of Sept. 8. In *M/A Com, Inc. v. Perricone*, 187 Ill.App.3d 358, 543 N.E.2d 228, 134 Ill.

Dec. 945 (1989), an Illinois Appeals Court found that by estopping the insurer from raising any affirmative defense, the trial court never addressed the insurer's late notice defense. The Appeals Court stated, "The duty to defend, although broad, is not boundless. The doctrine of estoppel arises only where a duty to defend exists and has been breached by the insurer. It does not prevent the insurer from raising the issue of whether it did in fact breach a duty to defend its insured." *Id.* at 231, 134 Ill.Dec. 945.

A district court interpreting Illinois law in *International Environmental, Corp. v. National Union Fire Ins., Co. Pittsburgh, Pa.,* 860 F.Supp. 511 (N.D.Ill.1994) made a distinction between conditions precedent and exclusions:

Conditions precedent to a contract or an insurance policy, by definition, are conditions that must be met in order for the contract or policy to become effective.... If an insured fails to meet certain preconditions, then the insurance policy does not take effect, and, by extension, no obligation to defend or indemnify ever attaches to the putative insurer. Exclusions, on the other hand do not operate to void an insurance policy, but to carve out exceptions to coverage within the policy.

*International* at 516. Although *IEC* dealt primarily with the "known loss" defense as a condition precedent rather than late notice, its citation of *Perricone* suggests that the notice requirement in an insurance contract also qualifies as a condition precedent distinguishable from an exclusion. *Id.* at 516. Because the *IEC* court decided that the insurer's known loss defense was based on a condition precedent, the Court vacated its previous order which estopped the insurer from arguing that defense and found that there were questions of fact regarding the known loss defense that a jury had to decide. *Id.* at 517.

In *Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 292 Ill.App.3d 1036, 687 N.E.2d 82, 227 Ill.Dec. 159 (1997) (*reh.de-*

*nied*) (*leave app. allowed,* 177 Ill.2d 569, 698 N.E.2d 543, 232 Ill.Dec. 452 (1998)), an Appellate Court in Illinois also found that estoppel of an insurer for failure to defend doesn't extend to defenses based on a condition precedent of timely notice.

Where conditions precedent to coverage are involved, ... First, the insurance contract does not take effect without timely notice. Second, the party in breach is the policyholder, not the insurer.

Thus, it would be conceptually incoherent to permit estoppel to arise where a duty to defend may well not have been breached because of the prior breach by the insured of a condition precedent regarding the giving of timely notice. The insured's breach of the timely notice provision, if proven, would preclude the vesting of any right in the insured to a defense and any correlative duty to defend on the part of the insurer.

*Id.* at 1049, 227 Ill.Dec. 159, 687 N.E.2d 82 (citations omitted). According to the *Wausau* decision, the insurer can assert lack of timely notice without defending or reimbursing its insured or filing a timely declaratory judgment action. *Id.* at 1048, 227 Ill.Dec. 159, 687 N.E.2d 82.

In its *Federal* opinion, the Seventh Circuit did not address Federal's late notice defense nor did it address whether its finding of estoppel reached a late notice defense.[3] In ordering the parties to comment on the cases above, the Court was concerned with the question of whether it could consider Federal's late-notice defense as a matter the Seventh Circuit left outside its mandate. If the Illinois cases proved to be persuasive authority on the estoppel/late notice issue, the Court would consider addressing the issue or certifying it to the Indiana Supreme Court.

Stroh, however, mounts several attacks on the authority of these cases. Supplemental Brief of Oct. 30, at 7–8. Stroh points out that *Wausau* itself acknowledges

3. Stroh points out in its Supplemental Brief of Oct. 30, 1998, at 8, that the Seventh Circuit observed that the *Calumet* suit was filed in June, 1994, and "turned ... over" to Federal in "March of 1995" (*Federal* 127 F.3d at 564), and nonetheless the Seventh Circuit held that Federal had a duty to defend. However, the mere notation of these dates does not indicate that the Seventh Circuit considered Federal's late notice defense.

that there is a line of Illinois cases which rejects an exception to the estoppel of defenses based on conditions precedent such as late notice. Supplemental Brief of Oct. 30, at 11 (citing *Wausau*, 227 Ill.Dec. 159, 687 N.E.2d at 91). These include *Simmon v. Iowa Mut. Cas. Co.*, 3 Ill.2d 318, 121 N.E.2d 509, 512 (1954) and Seventh Circuit cases *Maneikis v. St. Paul Insurance Co.*, 655 F.2d at 822 and *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1261 (7th Cir.1993). Furthermore, the *Wausau* case is currently pending appeal in the Illinois Supreme Court. *Id.* at 10–11. For these reasons, the cases recommended by the Court for comment do not have a great deal of authority.[4]

Federal places much emphasis upon the Indiana case, *Miller v. Dilts*, 463 N.E.2d 257 (Ind.1984). The main holding of *Miller* is that "[p]rejudice to the insurance company's ability to prepare an adequate defense can ... be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit." *Id.* at 265.

In reaching this holding, the Indiana Supreme Court agreed that, "the dut[y] to notify ... [is a] condition[ ] precedent to the insurance company's liability to its insured." *Id.* at 260 (*citing Motorists Mut. Ins. Co. v. Johnson*, 139 Ind.App. 622, 218 N.E.2d 712 (1966); *London Guarantee & Accident Co. v. Siwy*, 35 Ind.App. 340, 66 N.E. 481 (1903). Furthermore, "The notice requirement is 'material, and of the essence of the contract.'" *Id.* at 265 (*quoting London Guarantee*, 66 N.E. at 482). As a result, the Indiana Supreme Court affirmed trial court decisions granting summary judgment to insurance companies who defended their denials of coverage on the basis of late notice. None of these cases, however, indicated that the insurance companies themselves delayed in providing notice of their denials or were estopped for doing so. *Miller v. Dilts*, then, does not provide guidance on whether an insurance company which has delayed in providing notice of non-coverage is estopped from recourse to a late notice defense.[5]

---

4. Stroh advances other arguments against this Court's consideration of whether estoppel reaches a late notice defense, but the Court is not persuaded by them. Stroh argues that the insurance contract does not make timely notice a condition precedent to coverage because it does not indicate explicitly that there will be no coverage unless Heileman tendered its claim in a timely manner. Supplemental Brief of Oct. 30 at 9. *Miller v. Dilts* undercuts this argument because of its finding that timely notice is a condition precedent to the insurer's liability. *Id.*, 463 N.E.2d 257, 263 (1984). Stroh also argues that Federal cannot use late notice to defeat coverage because Federal's complaint never pleaded that Heileman's notice was late. However, Federal argued its late notice defense in its Brief of November 30, 1995, opposing Heileman's Motion for Judgment on the Pleadings, at 19–20. Heileman's Reply of December 29, 1995, at 21–23, addressed the late notice defense, but did not object to it on the basis of Federal's failure to plead it in its complaint. It appears then to the Court that Heileman consented to litigate this defense as if it were raised in the complaint. Fed.R.Civ.P. 15(b). The Court may then constructively amend the complaint to include the late notice defense. *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir.1998) (constructively amending complaint to include strict liability issue when both parties addressed strict liability in their summary judgment briefs).

5. Stroh presents four cases which it claims indicate that estoppel does not reach late notice in Indiana. Stroh quotes *Miller's* discussion of *Mo-*

*torists Mutual Insurance Co. v. Johnson*, where the Court concluded that Motorist "could not claim lack of cooperation when Gammon did not tender his defense, and was estopped to require performance by him." *Miller*, 463 N.E.2d at 262. As the subsequent passage quoted from *Motorists* indicates, however, the insurer knew about the action "almost since its inception." *Id.* The Court in *Motorists* found that when the insurance company, after being promptly notified, wrongly denies coverage, it waives its cooperation and notice provisions and so is estopped from raising these defenses. *Motorists*, 218 N.E.2d at 714, 717–18. That is different from the case at hand, where the insured did not notify the insurance company of the lawsuit for eight months. In *Hartford Acc. & Indem. Co. v. Armstrong*, 125 Ind.App. 606, 127 N.E.2d 347 (1955) the Indiana appellate court held that the insurer could not claim a lack of written notice when oral notice was given to the agent. *Id.* at 351–52. In contrast to the instant case, the insurer in *Armstrong* received timely notice. In *McNall v. Farmers Ins. Group*, 181 Ind.App. 501, 392 N.E.2d 520 (1979), the Indiana appellate court held that after an insurer denies coverage, the right to compel the insured to engage in arbitration on issues subject to arbitration under the policies was waived. *Id.* at 524. In contrast to the instant case, *McNall* was concerned with whether an insured must comply with policy conditions after a denial of coverage, not before. Finally, *Washington Sports and Entertainment, Inc. v. United Coastal Ins. Co.*, 7 F.Supp.2d 1 (D.D.C.1998), was decided under District of Columbia law, not Indiana law.

As noted earlier, the *Protective* case indicates that estoppel reaches virtually any defense an insurer may assert. *Protective,* 423 N.E.2d at 661. In *Ivetich,* 445 N.E.2d, at 111–112, the Indiana Appeals court estopped an insurer from using a defense based on a condition precedent in its contract. Though the Court is not aware of any clearly controlling precedent from the Indiana Supreme Court on this issue, there is precedent at the appellate level indicating that estoppel reaches a defense based on a condition precedent and the Court has found no Indiana caselaw that would indicate that estoppel would not reach Federal's defense of late notice. Because of this, the Court declines to certify this issue to the Indiana Supreme Court.[6] Furthermore, the Court agrees with Stroh's argument that since the Seventh Circuit has found estoppel, it would be more appropriate and preferable for the Seventh Circuit to interpret the reach of estoppel. And if the Circuit cannot resolve the issue under Indiana law, the Circuit itself may certify the question to the Indiana Supreme Court. Supplement Brief of October 30, at 14.

The Court summarizes to this point. The Court has found that Federal is estopped from using its defenses of prior loss, pretender fees and costs, and setoff. The Court also finds that Federal is estopped from asserting its late notice defense under Indiana law. Federal is not estopped from asserting its defense of prejudgment interest accrued during bankruptcy. The Court allows Federal a credit for prejudgment interest accrued between June 7, 1996, and October 24, 1996.

**Stroh's Petition for Fees and Costs**

The Court ordered the parties to comment on whether Stroh should recover fees and costs expended in its defense of Federal's declaratory judgment action and whether this issue should be certified to the Indiana Supreme Court. Order of Sept. 8. Both parties have taken the position that there should be no certification because of the existence of clearly controlling state precedent on the question. Federal Brief of Oct. 30 at 2; Stroh Brief of Oct. 30 at 14. However, both parties have come to diametrically opposed conclusions as to what that clearly controlling precedent indicates.

Stroh claims it may recover these fees and costs because Federal's contract supports recovery, Indiana law does not preclude recovery, Federal waived objection, and Federal is estopped from objecting. Brief of Oct. 30 at 12. Stroh points to the provision in the insurance contract that promises to reimburse "the insured's expenses incurred at our request. . . ." Defense Provisions, p. 5 of 21. Stroh's Brief of Feb. 2 at 4. Stroh reasons that when Federal brought its declaratory judgment action against Heileman, it forced Heileman to defend itself and thereby "requested" the expenses incurred as a result of the lawsuit. *Id.* The only Indiana authority Stroh presents in support of its position is a dissent from an Indiana Supreme Court denial of transfer written by retired Justice DeBruler which collects and analyzes authorities from other state courts that favor Stroh's position. *Mikel v. American Ambassador Cas. Co.,* 652 N.E.2d 503 (Ind.1995). *Id.* at 4–5.

Being a dissent, Justice DeBruler's opinion has no precedential authority. Furthermore, it is a dissent to a denial of transfer by which the Indiana Supreme Court let stand the Indiana Appeals Court opinion in *Mikel v. American Ambassador Cas. Co.,* 644 N.E.2d 168 (Ind.Ct.App.1994), *trans. denied.* That case is different from the one before the Court in that it was the insured, as opposed to the insurer, who brought the declaratory action.[7] Nevertheless, the analyses used by the Appeals Court and by Justice DeBruler are of value in understanding Indiana law.

---

6. Indiana Rule of Appellate Procedure 15(O) provides that a federal court may certify a question of state law to the Indiana Supreme Court which is determinative of the case and for which there are no clearly controlling precedents in the decisions of the Indiana Supreme Court.

7. *Mikel* states, "This is not a case where the insurer rather than the insured brings a declara-

tory judgment action, and the insured is forced to defend and prevails." *Id.* at 171. "We are not asked to decide, nor do we decide, whether when the insurer brings a declaratory judgment action and the insured prevails, the insurer has 'requested' that the insured incur attorney's fees." *Id.* at 171 n. 2.

The *Mikel* opinion states that under the American Rule, "parties to litigation are required to pay their own attorney's fees, absent an agreement, statute or rule to the contrary." *Id.* at 169 (*citing Johnson v. Sprague*, 614 N.E.2d 585, 590 (Ind.Ct.App. 1993). The insured in *Mikel* based his claim for fees and costs on contractual language similar to that found in the Federal contract: "In addition to our limit of liability, we will pay on behalf of a covered person: ... 5. Other reasonable expenses incurred at our request." *Id.* Construing the plain and ordinary meaning of the term, "request," however, the *Mikel* Court held that when the insured brings an action for a declaration of coverage and prevails, absent a bad faith denial by the insurer, attorney's fees incurred by the insured in the prosecution of that action are not incurred at the "request" of the insurer and are not recoverable. *Mikel* at 172. And further, "Our holding is consistent with the long-standing rule in Indiana that the insurer may dispute claims in good faith." *Id.* at 172 (*citing Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind.1993)). "[T]he insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable." *Mikel* at 172 (*quoting Vernon Fire & Cas. Ins. Co. v. Sharp* 264 Ind. 599, 349 N.E.2d 173, 181 (1976)).

Of course, the *Mikel* case did not address the situation in which the insurer as opposed to the insured brings the declaratory action. However, Justice DeBruler's dissent, upon which Stroh exclusively relies, emphasizes that "whether the insurer or the insured brings the action should not determine whether the insured will be awarded attorney's fees should the insured prevail." *Id.* at 507. His main rationale for reversing the American rule regardless of whether insured or insurer brings suit was "to put the insured in as good a position as he would have occu-

pied if the insurer had performed its duty." *Id.* at 505. Justice DeBruler, no doubt, had the opportunity to convince his brethren on the Indiana Supreme Court to grant transfer of the case, but they decided to let the appellate decision stand. This indicates that in Indiana, the policy to allow insurance companies to dispute coverage issues in good faith trumps the policy of putting the insured in as good a position as he would be if the insurer had performed. Justice DeBruler notes that "[t]he case law of various states splits on the question of a prevailing insured's ability to recover attorney's fees in a declaratory judgment action.... Many jurisdictions still follow [the American Rule]." *Mikel*, 652 N.E.2d at 504. The Indiana Supreme Court's denial of transfer in the *Mikel* case indicates that Indiana is one of those jurisdictions which retain the American rule in these cases.[8]

 There is no agreement, statute, or rule in this case which would justify a reversal of the American Rule. Nor is it possible to find bad faith, since Federal won its case at the trial court level, which was reversed on appeal with a dissenting opinion. The Court denies Stroh's Petition for fees and costs expended in defending Federal's declaratory judgment action.[9]

## Damages

(1) Stroh reports that Heileman paid $1,633,586.73 for the *Calumet* suit: $783,-586.73 for defense and $850,000 for settlement. Brief of Feb. 2 at 2. Federal has never challenged these amounts as necessarily and properly paid. Accordingly, Stroh is entitled to the principal sum of $1,633,586.73.

(2) Interest

 (a) "Under Indiana law prejudgment interest is proper when damages are ascertainable in accordance with fixed rules

8. Justice DeBruler also argued that, "Allowing attorney's fees to the prevailing insured in a declaratory judgment action would lessen the disparity in bargaining power [between an insurance company and an individual policy holder] and promote the speedy payment of claims." *Mikel* at 507. There is no such disparity between the litigants who are now before the court, so this rationale would not obtain here.

9. Stroh argues that Federal has waived its objection to these fees by failing to object earlier. Supplemental Brief of Oct. 30 at 9–10. However, even if Federal never objected, this Court cannot grant these fees to Stroh in the absence of an agreement, statute or rule that would permit it.

of evidence and accepted standards of valuation at the time damages accrue." *Indiana Ins. Co. v. Granite State Ins. Co.*, 689 F.Supp. 1549, 1563 (S.D.Ind.1988) (*quoting Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir.1985)). The prejudgment interest rate is set by statute at eight percent a year. I.C. 24–4.6–1–102. "Prejudgment interest is computed from the time the principal amount was demanded or due." *Wilson v. Montgomery Ward & Co.*, 610 F.Supp. 1035, 1041 (N.D.Ind.1985). Because Federal was supposed to be defending Heileman and paying on behalf of Heileman under Federal's insurance contract, all amounts were due from Federal when Heileman paid them. "Absent a controlling statute, prejudgment interest should run from the date on which the insured's claim should have been paid. In the case of a liability policy, the debt is due on the date the insured makes a payment that the carrier was obligated to make." 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 9.23 at 71 (3d ed.1995). See also *Hizer v. General Motors Corp., Allison Gas Turbine Div.*, 888 F.Supp. 1453, 1464 (S.D.Ind.1995) (*stating* "[t]he central governing principle . . . is that interest— whether prejudgment or interest on delayed payment—begins to run from the time payment is due under the governing contract. RESTATEMENT (SECOND) OF CONTRACTS §§ 354 and cmt. c (1979) (interest recoverable from time for performance)").

According to Stroh, the prejudgment interest that has accrued up to December 12, 1997, is $276,176.31. Brief of Feb. 2 at 4. Exhibits A–1 and A–2 of the Affidavit of John L. Currie attached to Stroh's Brief in Support of its Petition for Further Relief of Feb. 2 provide tables of the amounts Heileman paid to its lawyers and Calumet, the dates on which these amounts were paid, and the amount of interest accrued for each payment up to December 31, 1997.

The Court has found that Federal is entitled to a prejudgment interest credit because of the period of time in which the case was stayed due to Heileman's bankruptcy. In calculating this credit, the Court subtracts the interest that accrued on Stroh's principal between June 7, 1996, to October 24, 1996, a period of 139 days. For payments made before June 7, 1996, this may be done by calculating the interest that accrued on these payments for 139 days and subtracting those results from the total interest that accrued to December 31, 1997. For payments made between June 7, 1996, and October 24, 1996, the Court calculates the interest that accrued on these payments for the number of days between the date these payments were made until October 24, 1996, and subtracts those results from the total interest accrued to December 31, 1997.

The following table outlines the process.

| | Date of Payment(s) | Amount of Payment(s) | Daily Interest at 8.00% | Number of Days | Interest to be Subtracted |
|---|---|---|---|---|---|
| Sonneschein | Before 6/7/96 | $411,111.13 | $ 90.2126 | 139 | $12,539.55 |
| | 7/18/96 | $ 26,454.92 | $ 5.7983 | 98 | $ 568.24 |
| | 7/30/96 | $ 1,457.60 | $ 0.3194 | 86 | $ 27.47 |
| Eichhorn | Before 6/7/96 | $ 40,111.13 | $ 8.7195 | 139 | $ 1,222.02 |
| Barsby | Before 6/7/96 | $ 7,581.58 | $ 1.6617 | 139 | $ 230.98 |
| Kearney | Before 6/7/96 | $243,029.80 | $ 53.2668 | 139 | $ 7,404.09 |
| | 8/6/96 | $ 10,217.28 | $ 2.2394 | 79 | $ 176.91 |
| Tollison | Before 6/7/96 | $ 43,139.43 | $ 9.4552 | 139 | $ 1,314.28 |
| Calumet | Before 6/7/96 | $850,000.00 | $186.3014 | 139 | $25,895.89 |

Prejudgment Interest Accrued Between 6/7/96 and 10/24/96 $49,379.43

Federal, then, is entitled to a credit of $49,379.43 on the prejudgment interest accrued up to December 31, 1997. That is: $276,176.31 − $49,379.43 = $226,796.88. Stroh is then entitled to $226,796.88 in prejudgment interest through December 31, 1997

(b) Stroh is also entitled to prejudgment interest accumulating at a daily rate of $358.05 from December 31, 1997 to the date of this judgment.

(3) As noted earlier, the Court denies Stroh's Petition for attorney's fees and costs expended in defending the declaratory action which Federal brought against Stroh.

(4) Finally, Federal Rule of Appellate Procedure 39(a) provides, "[I]f a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered; ..." This case was, of course, reversed on appeal, so that costs shall be taxed against Federal as the appellee. Fed.R.App.P. 39(e) further provides, "[T]he fee for filing the notice of appeal shall be taxed in the district court as costs of the appeal in favor of the party entitled to costs under this rule." Stroh is entitled to the $105.00 charged to appeal this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Federal a credit of $49,379.43 for the prejudgment interest that accrued on Stroh's principal while proceedings were stayed due to Heileman's bankruptcy; pursuant to 28 U.S.C. § 2202, the Court ORDERS Federal to pay to Stroh: principal of $1,633,586.73; interest to December 1, 1997, of $226,796.88, and interest of $358.05 for each day from December 31, 1997 to the day this judgment is entered; and $105.00 charged to appeal this case. The Court DENIES Stroh's petition for fees and costs expended to defend Federal's declaratory action.