FOURTH DIVISION

November 25, 1998

                     

No. 1-97-0917

MARIA JAIME,      ) APPEAL FROM THE

) CIRCUIT COURT OF

    Plaintiff-Appellee, ) COOK COUNTY

)

    v. )

)                 

DIRECTOR, DEPARTMENT OF EMPLOY- ) No. 96 L 50949 

MENT SECURITY; DEPARTMENT OF       )

EMPLOYMENT SECURITY, BOARD OF      )                       REVIEW,                            )

                   )   

    Defendants-Appellants ) 

)        

                                   )  HONORABLE JOANNE L. 

)  LANIGAN, JUDGE 

)  PRESIDING.

(Ed Miniat, Inc., )

)

    Defendant). )

  

     

JUSTICE McNAMARA delivered the opinion of the court:

                         

Plaintiff Maria Jaime filed this action for administrative review in the circuit court against defendants Director of the Illinois Department of Employment Security (IDES), Board of Review of the Illinois Department of Employment Security (Board of Review), and Ed Miniat, Inc. (Miniat), seeking reversal of the Board of Review's decision to affirm the IDES referee's decision to deny Jaime's claim for unemployment insurance benefits based on a finding of ineligibility.  (The IDES referee's decision had affirmed an IDES claims adjudicator's earlier determination that plaintiff was ineligible for unemployment benefits.)  The Board of Review found that Jaime had voluntarily terminated her employment without good cause attributable to her employer.  The circuit court reversed the Board of Review's decision as being against the manifest weight of the evidence and entered judgment in favor of Jaime.  It is from this judgment that the Director of IDES and the Board of Review of IDES (hereinafter collectively referred to as defendants) appeal.  Miniat is not a party to this appeal.  

On appeal, defendants contend that the circuit court erred in finding that the Board of Review's decision to deny Jaime unemployment insurance benefits because she voluntarily left work without good cause attributable to her employer was against the manifest weight of the evidence.  For the reasons stated below, we affirm.  The undisputed facts relevant to this case are as follows.

Jaime worked for Miniat for approximately 10 years, and for the duration of her employment there, she resided at 2307 South Marshall Boulevard in Chicago.  In December 1995, Miniat moved its place of business from 38th Street and Halsted Street in Chicago to 16250 South Dakin in South Holland, a distance of 16 miles.  Following Miniat's move, Jaime continued to work for the company for about six weeks.  (Defendants state in their brief that this period was two months.)  On February 11, 1996, Jaime applied for unemployment compensation benefits, and on February 13, 1996, she resigned from Miniat.

Miniat filed a protest of Jaime's claim on February 28, 1996, stating that Jaime was not entitled to benefits because she had left work voluntarily.  On March 14, 1996, Jaime informed the claims adjudicator that she had left Miniat due to a lack of transportation.  On March 16, 1996, the claims adjudicator denied her claim for benefits, finding that Jaime had "voluntarily left work without good cause attributable to [her] employer."  Jaime requested reconsideration of the claims adjudicator's determination, stating that she had left her job due to a lack of transportation after her employer moved close to Indiana.

On April 25, 1996, a hearing was held before a referee regarding Jaime's eligibility for benefits.  At that hearing, Jaime appeared 
pro
 
se
 and was accompanied by a Spanish translator.  Miniat was represented by Danielle Satelius of the company's human resources department.  At the hearing, the referee asked a total of seven nonroutine questions.  Jaime testified that she had worked for Miniat for 10 years and that, during the preceding December, the company had moved from 38th Street and Halsted Street in Chicago to 16250 South Dakin in South Holland.  Jaime stated that following Miniat's move, she continued to work for the company, obtaining a ride with a coworker.  She asserts that she resigned from Miniat on February 13, however, because the coworker with whom she had been getting a ride had stopped working for the company and Jaime therefore had no means of getting to work.  The entire transcript of the hearing is 2 1/2 pages long.   

The referee issued a decision on April 26, 1996, affirming the decision of the claims adjudicator and denying Jaime unemployment insurance benefits.   The referee found that Jaime "voluntarily left her job because she lost her means of transportation to get to work."  

Thereafter, Jaime retained counsel.  On May 8, 1996, she requested review of the referee's decision by the Board of Review.  On August 14, 1996, the Board of Review issued its decision, affirming the referee's decision and concluding that Jaime had properly been denied unemployment insurance benefits, because she had left work due to transportation problems, which were not attributable to her employer.  The Board did not provide an analysis supporting its conclusion. 

On August 23, 1996, Jaime filed her complaint for administrative review of the Board of Review's decision pursuant to section 3-101 
et
 
seq.
 of the Code of Civil Procedure (Code)(735 ILCS 5/3-101 
et
 
seq.
 (West 1994)).  She also filed a memorandum of law in support of said complaint, wherein she asked the trial court to take judicial notice of the approximate 16- mile distance between Miniat's former and current locations.  On February 6, 1997, the circuit court issued an order, reversing the Board of Review's decision, finding it contrary to law.  The court, stating that it was making its determination on a case-by- case basis, declared that it would have been too great a burden on Jaime to have required her to take public transportation to Miniat's new location.  The court concluded that it found the Board of Review's decision "contrary to law in this particular case only" and that it reached this decision because it was aware that Jaime did not drive. 

The main purpose of the Unemployment Insurance Act (Act) is to alleviate the economic insecurity and burden caused by involuntary unemployment.  820 ILCS 405/100 (West 1994); 
Jones v. Department of Employment Security
, 276 Ill. App. 3d 281, 657 N.E.2d 1141 (1995).  "The Act is intended to benefit only those persons who become unemployed through no fault of their own."   
Jones
, 276 Ill. App. 3d at 284, 657 N.E.2d at 1144.  Section 601(A) of the Act therefore provides that "[a]n individual shall be ineligible for benefits [because] he has left work voluntarily without good cause attributable to the employing unit."  820 ILCS 405/601(A) (West 1994);  
Jones
, 276 Ill. App. 3d at 284, 657 N.E.2d at 1144.   

"The findings and conclusions of an administrative agency on questions of fact [are] held to be 
prima
 
facie
 true and correct."  735 ILCS 5/3-110 (West 1994).  It is well settled that such findings will not be disturbed by a reviewing court unless they are found to be against the manifest weight of the evidence.   
Jones
, 276 Ill. App. 3d 281, 657 N.E.2d 1141.  "An administrative decision is against the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision."  
Jones
, 276 Ill. App. 3d at 284, 657 N.E.2d at 1144, citing 
County of Will v. Illinois State Labor Relations Board
, 220 Ill. App. 3d 62, 65, 580 N.E.2d 887 (1991).  Where the evidence supports fairly the action of the administrative agency, the decision is considered not to be against the manifest weight of the evidence and must be sustained on review.  
Jones
, 276 Ill. App. 3d 281, 657 N.E.2d 1141.   

"However, as deferential as this standard of review is, it `does not permit Illinois courts to automatically place a stamp of approval on the findings merely because [the] agency heard the witnesses and made the requisite findings.'"  
Jones
, 276 Ill. App. 3d at 285, 657 N.E.2d at 1144, quoting 
Viera v. Illinois Racing Board
, 65 Ill. App. 3d 94, 99, 382 N.E.2d 462 (1978).  Thus, "`when an administrative order is contrary to the manifest weight of the evidence, it is the duty of the appellate court to affirm the action of the circuit court in setting the order aside.'"  
Jones
, 276 Ill. App. 3d at 285, 657 N.E.2d at 1144, quoting 
Gee v. Board of Review
, 136 Ill. App. 3d 889, 895, 483 N.E.2d 1025 (1985).  

"While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally construed to favor the awarding of benefits."  
Kiefer v. Department of Employment Security
, 266 Ill. App. 3d 1057, 1061, 640 N.E.2d 1252, 1255 (1994).
   

Turning to the present case, we must first set forth the standard of review.  Jaime asserts that a 
de
 
novo
 standard of review is to be applied, since the facts of this case are undisputed and the question involved, she alleges, is one of law, as it concerns statutory interpretation.  We disagree.  Although the facts are undisputed, we find that the question with which we are presented, whether Jaime's inability to maintain her employment after her employer relocated constitutes "good cause attributable to [her] employer" pursuant to section 601(A) of the Act (820 ILCS 405/601(A)(West 1994)), is a question of fact.  Thus, the appropriate standard of review to be applied, as defendants assert, is the manifest weight of the evidence standard.  
Jones
, 276 Ill. App. 3d 281, 657 N.E.2d 1141. 

Defendants assert that the Board of Review's decision to deny Jaime unemployment insurance benefits, because she voluntarily left work without good cause attributable to her employer, was not against the manifest weight of the evidence.  They argue that Jaime failed to bear her burden of demonstrating that her decision to terminate her employment with Miniat was for good cause.  Defendants point out that Jaime did not present evidence regarding her salary or the increased distance she would be required to travel, which would have allowed the Board of Review to weigh the increased transportation expenses she would incur in traveling to Miniat's new location, against the compensation that she was receiving.

Defendants further claim that while Jaime asserted that she quit work due to transportation problems, she failed to demonstrate that she made reasonable efforts to resolve those problems which arose as the result of Miniat's move, such as finding alternative means of transportation.  Defendants assert that the record is devoid of any evidence that she made any effort to employ public transportation, that she spoke to her employer in an effort to resolve any transportation problems, that she spoke to other employees regarding the possibility of riding with them after the coworker with whom she was getting a ride to work resigned or that she could not purchase a car.  Defendants state that while the trial judge stated as grounds for her ruling that "[she was] making this particular decision because she knew this claimant does not drive," the record contains no evidence that Jaime is unable to drive.

Alternatively, defendants argue that Jaime's decision to continue working for two months following her employer's move precludes her from claiming that her subsequent decision to resign was due to good cause attributable to her employer.  They assert that Jaime presented no evidence that during this time period, she spoke to her employer in an effort to resolve the problems confronting her.  Rather, defendants argue that because Jaime remained where the working conditions had changed, she is therefore not entitled to claim that change as good cause for leaving.

This is a case of first impression in Illinois.   As such, it is instructive to look at decisions of foreign jurisdictions that have considered this issue.  

Because the critical issue with which we are presented concerns whether Jaime's leaving her employment was for "good cause attributable to the employing unit," it is imperative that we define the phrases "good cause" and "attributable to the  employing unit."  "`Good cause' connotes a reason for rejecting work that would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work."  
Watson v. Employment Security Comm'n
, 111 N.C. App. 410, 413, 432 S.E.2d 399, 401 (1993).  "Good cause" for voluntarily leaving employment has also been defined as that which results from circumstances producing real and substantial pressure to terminate employment and which under the circumstances would compel a reasonable person to act in the same manner.  
Burke v. Board of Review
, 132 Ill. App. 3d 1094, 1101, 477 N.E.2d 1351, 1356 (1985), citing 
Deiss v. Unemployment Compensation Board of Review
, 475 Pa. 547, 381 A.2d 132 (1977).  "A cause `attributable to the employer' is one which is produced, caused, created or [is the] result of actions by the employer and also includes inaction by the employer."   
Watson
, 111 N.C. App. at 413, 432 S.E.2d at 401.  The salient question is whether the conduct of the employer caused the termination of employment to occur.  
Pearson v. Board of Review
, 194 Ill. App. 3d 1064, 1068, 551 N.E.2d 1021, 1025 (1990).  A "substantial, unilateral change in employment which renders the job unsuitable" may prevent disqualification based on voluntarily leaving one's employment.  
Finik v. Department of Employment Security
, 171 Ill. App. 3d 125, 133, 524 N.E.2d 1148, 1156 (1988).

In the present case, the Board of Review stated the following in its decision:

"The company moved to the suburbs and the claimant

 then got a ride from another employee for about one

 and a half months.  After that employee left, the 

claimant had no means to get to work, and was forced

 to quit.  Nevertheless her leaving [her job] was 

because of transportation, which was not attributable 

to the employer."

In 
Watson
, the claimant, over a period of approximately 10 months, made a series of different transportation arrangements to get to work after her employer moved its plant from Charlotte to Mooresville, North Carolina.  Immediately prior to quitting her job, she had been riding to work with a coworker in his truck.  When the coworker's truck broke down, the claimant, believing the truck to be beyond immediate repair, quit her job, as she had no other foreseeable means of transportation to work.  
Watson
, 111 N.C. App. 410, 432 S.E.2d 399.  In interpreting an unemployment compensation statute similar to our act in Illinois, the North Carolina appellate court held that, with regard to the claimant's leaving her job, the employer's moving of its plant was "good cause attributable to the employer."   
Watson
, 111 N.C. App. at 414, 432 S.E.2d at 402.  More specifically, the court stated:

"The relocation of the plant was an act of the 

employer, done for its own benefit, and was an

 event over which petitioner had no control.  Her 

leaving work was solely the result thereof.  Thus

 her separation from employment was unquestionably 

`attributable to the employer.'"  
Watson
, 111 N.C.

 App. at 415, 432 S.E.2d at 402.

Applying the rationale espoused in 
Watson
 to our case, we find that Miniat's moving of its plant from the south side of Chicago to South Holland, a distance of about 16 miles, constituted "good cause attributable to the employer" with regard to Jaime's leaving her job.

Jaime's testimony at the hearing demonstrates that she made reasonable efforts to maintain her employment.  Miniat, her employer of 10 years, moved its plant from a site near her home in Chicago to a suburban location approximately 16 miles away.  Jaime continued to work for Miniat for six weeks following the move, obtaining a ride with a coworker.  Jaime resigned only after said coworker quit her job, as Jaime no longer had a means of getting to work.

The findings of the Board of Review clearly demonstrate that Jaime desired and attempted to continue to work for Miniat after its move and that the relocation of the company was an act of Miniat, done for its benefit, over which Jaime had no control.  See 
Watson
, 111 N.C. App. 410, 432 S.E.2d 399.  A reasonable person would view Jaime's reason for leaving her employment as a valid one and not indicative of an unwillingness to work on her part.  Notably, the Board of Review did not find her unwilling to work either.  See 
Watson
, 111 N.C. App. 410, 432 S.E.2d 399.  While an employee's transportation to and from work is generally not the responsibility of the employer, Jaime's inability to maintain her employment is the direct result of Miniat's moving its location, thereby significantly changing the circumstances of her employment.  See 
Watson
, 111 N.C. App. 410, 432 S.E.2d 399.  

Therefore, we find that the credible evidence Jaime presented was sufficient to meet her burden of proving her entitlement to benefits, as it showed that her leaving was for "good cause attributable to her employer."  We find this to be particularly true under the circumstances, where Jaime, accompanied by a Spanish translator because she does not speak English fluently, appeared 
pro
 
se
 at the hearing, during which her work record of 10 years was never criticized.  Jaime showed a causal connection between Miniat's change of location and her inability to get to work, despite her reasonable attempts to do so.  Indeed, the circuit court noted that "the public transportation to get to that particular location in South Holland would really create an undue burden on [Jaime]."  Our findings are in sync with our legislature's policy that a person who becomes unemployed through no fault of his own should be entitled to unemployment compensation benefits.  820 ILCS 405/100 (West 1994); see 
Watson
, 111 N.C. App. 410, 432 S.E.2d 399.  

Furthermore, we find no merit in defendants' alternative, if not disingenuous, contention that Jaime's decision to continue working for a period of time following Miniat's move to South Holland precludes her from claiming that her subsequent decision to resign was due to "good cause attributable to her employer."  Jaime should not be penalized for her attempt to continue working after Miniat chose to move its location to another city.  Rather, Jaime's efforts should be commended; they comport with state policy that unemployment benefits should go only to those who are not at fault in their unemployment.  
Watson
, 111 N.C. App. at 415, 432 S.E.2d at 402.  It is important to note that courts of other jurisdictions have also upheld the award of unemployment benefits where a person has left his employment due to workplace relocation, even in the instance where the person had attempted to work at the new location, as Jaime did here.  See 
Guillory v. Office of Employment Security
, 525 So. 2d 1197 (La. App. 1988); 
Ross v. Rutledge
, 175 W. Va. 701, 338 S.E.2d 178 (1985); 
J.C. Penney Co. v. Unemployment Compensation Board of Review
, 72 Pa. Commw. 445, 457 A.2d 161 (1983).

We note that 
Latzy v. Unemployment Compensation Board of Review
, 87 Pa. Commw. 432, 487 A.2d 121 (1985), and 
Lee v. Unemployment Compensation Board of Review
, 42 Pa. Commw. 461, 401 A.2d 12 (1979), two cases relied on by defendants, in which the claimants were denied unemployment benefits, are distinguishable from our case.  Unlike Jaime, who rode with a coworker for six weeks until that option was no longer available to her, the claimant in 
Latzy
 made no attempt to get to her new job location, while the claimant in 
Lee
 had several transportation options available to her to the new jobsite.  
Latzy
, 87 Pa. Commw. 432, 487 A.2d 121; 
Lee
, 42 Pa. Commw. 461, 401 A.2d 12.

 Accordingly, we hold that the trial court did not err, when it reversed the Board of Review's decision finding Jaime ineligible for unemployment benefits. 

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HOFFMAN and WOLFSON, JJ., concur.