AETNA CASUALTY AND SURETY COMPANY OF ILLINOIS, Plaintiff-Appellee, v. ALLSTEEL, INC., et al., Defendants-Appellants.

First District (6th Division)   No. 1—97—4095

Opinion filed March 26, 1999.

Wilson, Elser, Moskowitz, Edelman & Dicker, of Chicago, for appellant Federal Insurance Company.

Baker & McKenzie, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The Aetna Casualty and Surety Company (Aetna) brought a declaratory judgment action to resolve a coverage dispute with Federal Insurance Company (Federal) concerning defense costs and settlements paid on behalf of Allsteel, Incorporated (Allsteel). On cross-

motions for summary judgment, the Cook County circuit court denied Federal's motion, granted Aetna's motion, and entered judgment in favor of Aetna in the amount of $960,000.

Federal filed this timely appeal and contends that the circuit court erred in granting Aetna's motion for summary judgment because Allsteel's tender of a complaint to Aetna during Aetna's policy period constituted written notice of a "wrongful act," thereby obligating Aetna to provide coverage for Allsteel in three lawsuits filed after expiration of the Aetna policy. For the following reasons, we affirm the judgment of the circuit court.

I. BACKGROUND

In 1991, Aetna issued a "claims made" pension and welfare fund fiduciary responsibility insurance policy to the Allsteel retirement income plan for the period December 31, 1991, to December 31, 1992. Under the policy, only claims made during the policy period were covered. The Aetna policy contained a claims made extension clause which stated:

> "If, during the policy period hereof, the Insured shall first become aware of any Wrongful Act which may subsequently give rise to a claim against any Insured and shall during the policy period hereof give written notice to the Company of such Wrongful Act, then any such claim which is subsequently made against the Insured arising out of such Wrongful Act shall for the purposes of this policy be deemed to have been first made against the Insured during the policy period."

At the expiration of the policy period, Allsteel did not renew the Aetna policy.

Federal's fiduciary liability policy was in effect from June 30, 1994, to June 30, 1996. As part of its underwriting process, Federal asked Allsteel to complete an application before it would offer coverage. On the application, Allsteel stated that there were no "facts or circumstances which [it had] reason to suppose might afford valid grounds for any future claims that would fall within the scope of the proposed coverage." Allsteel also chose not to respond to a question concerning whether it had "given written notice under the provisions of any prior or current fiduciary liability insurance of specific facts or circumstances which might give rise to a claim being made against any insured." Federal offered coverage to Allsteel, and its policy included the following exclusion:

> "5. The Company shall not be liable for Loss on account of any Claim made against the Insured:
> (a) based upon, arising from, or in consequence of any circum-

stance if written notice of such circumstance has been given under any policy or coverage section of which this coverage is a renewal or replacement and if such prior policy or coverage section affords coverage \*\*\* for such Loss in whole or in part, as a result of such notice \*\*\*."

In 1974, Allsteel adopted a pension plan that provided retirement benefits for its employees. Under the terms of the plan, retirees received benefits as of their retirement date. In 1988 and 1991, Allsteel and its employees negotiated new collective bargaining agreements. The new agreements offered incentives for employees to take early retirement by March 31, 1991. Some Allsteel employees believed they had taken early retirement during early 1991 but learned that Allsteel had determined them ineligible for early retirement benefits.

In March of 1992, Meredith v. Allsteel, Inc., No. 92 C 1856 (N.D. Ill.), was filed in the United States District Court for the Northern District of Illinois. The plaintiffs were retired Allsteel employees who claimed they had been wrongly denied retirement benefits. The plaintiffs alleged that Allsteel had violated section 204(g) of the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1054(g) (1994)) by unlawfully amending the pension plan, wrongfully refusing to pay supplemental retirement benefits, breaching its fiduciary duty under section 104(b) of ERISA (29 U.S.C. § 1024(b) (1994)) and also violating the Labor Management Relations Act (LMRA) (29 U.S.C. § 141 *et seq.* (1994)). The district court granted Allsteel's motion for summary judgment and, in particular, held that the 1991 collective bargaining agreement did not violate federal law by reducing an accrued benefit. *Meredith v. Allsteel, Inc.*, 814 F. Supp. 657 (N.D. Ill. 1992). The plaintiffs appealed and the United States Court of Appeals for the seventh circuit affirmed in part, reversed in part and remanded. *Meredith v. Allsteel, Inc.*, 11 F.3d 1354 (7th Cir. 1993) (holding in part that the district court erred in defining "retire," but there was no impermissible reduction of an accrued benefit under ERISA).

On remand, plaintiffs sought leave to file an amended complaint so 13 new plaintiffs could join the case. The district court denied this request since the potential plaintiffs had not exhausted their administrative remedies. The action proceeded to trial, where Aetna provided the defense for Allsteel under the terms of its policy.

On January 12, 1995, former Allsteel employees filed Ahng v. Allsteel, Inc., No. 95 C 0214 (N.D. Ill.). The Ahng plaintiffs alleged that even though they satisfied the pre-1991 eligibility requirements for higher pension benefits, Allsteel had refused to pay them these supplemental benefits in violation of section 204(g) of ERISA. 29 U.S.C. § 1054(g) (1994). These plaintiffs had not retired in 1992 when the Meredith complaint was filed.

In April of 1995, Allsteel filed a motion for summary judgment, which the trial court granted in June of 1995. The plaintiffs appealed, and the seventh circuit reversed and remanded. *Ahng v. Allsteel, Inc.*, 96 F.3d 1033 (7th Cir. 1996). Even though the Ahng plaintiffs raised an issue similar to that in Meredith, the court of appeals made clear that "none of the [Ahng] employees retired before March 31, 1991," and "they therefore stand in a different position *** from the Meredith plaintiffs." *Ahng*, 96 F.3d at 1035. To be sure, the court of appeals stated that an "identity of interest" with *Meredith* was lacking because "[t]he *Meredith* plaintiffs had no need to press the point that the 1991 change in the plan harmed people who retired *after* March 31, 1991, for the simple reason that none of them fell within that group." (Emphasis in original.) *Ahng*, 96 F.3d at 1037.

In 1997, Ahng was settled. The case had been tendered to Federal, which defended the case, and even though Aetna denied coverage on the basis of policy language, it advanced money toward settlement while reserving its rights to recover from Federal.

Snitchler v. Allsteel, Inc., No. 95 C 4975 (N.D. Ill.), and Johnson v. Allsteel, Inc., No. 95 C 4976 (N.D. Ill.), were also filed in federal court in September of 1995. The Johnson plaintiffs sought relief under both the 1988 and 1991 collective bargaining agreements, section 204(g) of ERISA (29 U.S.C. § 1054(g) (1994)) and section 301 of the LMRA (29 U.S.C. § 185 (1994)). According to the plaintiffs, they intended to retire in 1991 but chose not to because they thought it was too late. Johnson settled in May 1997 and, as in Ahng, Federal provided the defense for Allsteel and Aetna declined on the basis that the claim was filed after the expiration of its coverage.

The Snitchler complaint alleged that Allsteel breached its fiduciary duty to the retirement plan and requested injunctive relief. However, the complaint did not request payment of retirement benefits because the plaintiff had not yet retired. On December 27, 1995, the trial court refused Allsteel's request to consolidate Johnson with Snitchler because the cases were not sufficiently related. Again, the case was tendered to Federal, which defended the case, and Aetna declined coverage.

Aetna originally filed this action against Allsteel seeking a declaration of its rights and obligations with respect to the Ahng, Johnson and Snitchler claims. To partially fund the settlements in these three cases and to settle its coverage dispute with Allsteel, Aetna paid $960,000 to the retirement plan for the benefit of the underlying plaintiffs. Federal also paid $960,000 to the Allsteel plan. Aetna and Federal agreed to litigate the issue of the insurance policies.

The circuit court denied Federal's motion for summary judgment,

granted Aetna's motion for summary judgment and entered a judgment in favor of Aetna. In so ruling, the court stated:

> "The clause in the Aetna policy that is in issue here is a policy that was in effect from December 31, 1991, to December 31, 1992.
>
> The clause in question is entitled Claims Made Extension Clause ***.
>
> ***
>
> My holding is that the filing of the Meredith complaint does not constitute the written notice that is required under the claims made extension clause. Therefore, with respect to the claims of Ahng filed on January 12th, 1995, the suit filed by Johnson on September 1, 1995, and the Snitchler suit filed on September 1, 1995, do not come within the claims made coverage under the Aetna policy. There will be summary judgment in favor of Aetna and against Federal."

Federal filed this appeal and requests reversal of the circuit court's ruling.

## II. ANALYSIS

■ As a preliminary matter, since this appeal arises from an order granting summary judgment on an issue of law, we review the case *de novo*. *Murneigh v. Gainer*, 177 Ill. 2d 287, 298 (1997). Under the Illinois Code of Civil Procedure (the Code), summary judgment is properly entered when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish a genuine issue of material fact and the moving party to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Walker v. Rogers*, 272 Ill. App. 3d 86, 89 (1995).

### A. Notice Under the Aetna Policy

Federal first argues that it would be incongruous for us to find that even though Aetna accepted coverage of the Meredith claim during the Aetna policy period, Aetna can now assert that written notice of the "wrongful acts" contained in the Meredith complaint was not properly provided during the policy period. Specifically, Federal insists that Allsteel satisfied the following condition precedent to coverage under the Aetna policy:

> "(a) In the event the Insured shall first become aware of any claim or allegation of a Wrongful Act or any occurrence which might reasonably give rise to such claim or allegation of a Wrongful Act, written notice containing particulars sufficient to identify the insured and any claimant and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured parties and of available wit-

nesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable;

(b) If claim is made or suit is brought against an Insured, the Insured or Insurance Representative shall immediately forward to the company every demand, notice, summons or other process received ***."

We disagree with Federal's argument.

■ The construction of an insurance policy is also a question of law subject to *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). The terms used in an insurance policy are accorded their plain and ordinary meaning. *Villicana*, 181 Ill. 2d at 441. However, a reviewing court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Koloms*, 177 Ill. 2d at 479. Provisions that limit or exclude coverage are to be construed liberally in favor of the insured. *Koloms*, 177 Ill. 2d at 479.

Federal does not cite any cases in support of its argument that tender of a complaint constitutes written notice for the purposes of a claims made insurance policy. Instead, Federal contends that the plain language of the policy should be construed in its favor because "[t]he court must not search for ambiguity where there is none." See *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

■ According to general principles of contract law, an ambiguity exists when a contract contains language that is susceptible to more than one reasonable interpretation. *Ford v. Dovenmuehle Mortgage, Inc.*, 273 Ill. App. 3d 240, 244 (1995). The policy at issue in the instant case was a claims made policy, as opposed to an occurrence policy. A claims made policy provides that the risk insured is the claim brought by a third party against the insured, not the occurrence itself. *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514 (1995). The purpose of a claims made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty. *Central Illinois Public Service Co. v. American Empire Surplus Lines Insurance Co.*, 267 Ill. App. 3d 1043, 1049 (1994).

A notice requirement in an insurance policy enables an insurer to make a timely and thorough investigation of a claim. *Employers Insur-*

*ance of Wausau v. Ehlco Liquidating Trust*, 292 Ill. App. 3d 1036, 1047 (1997). Notice provisions in insurance policies are considered valid conditions precedent to coverage and not mere technical requirements. See *Kerr v. Illinois Central R.R. Co.*, 283 Ill. App. 3d 574 (1996). Although the issue of whether notice was reasonable or sufficient is usually a question of fact, it may be a question of law when, as in the case at bar, the facts are not in dispute. *Employers Insurance of Wausau*, 292 Ill. App. 3d at 1048.

■ According to the plain language of Aetna's policy, written notice of any wrongful acts or circumstances that could lead to a claim by the insured had to specify the nature of the conduct at issue and supply names and addresses of the potential claimants, along with a complete description of the alleged wrongful conduct. In *Cincinnati Insurance Co. v. Baur's Opera House, Inc.*, 296 Ill. App. 3d 1011, 1013-14 (1998), an employee filed a race discrimination claim against his employer in federal court and then, after dismissal of his federal suit, he filed a similar claim in state court. The employer's insurer defended the lawsuit in federal court but never received notice of the state claim from the employer-insured.[1] The plaintiff then contested the insurer's denial of coverage on the basis that the insurer's defense of the suit in federal court provided sufficient notice of the state court lawsuit. *Cincinnati Insurance*, 296 Ill. App. 3d at 1016. The court rejected this argument and determined that "[t]he mere possibility [plaintiff] would file suit in state court is insufficient to constitute 'actual notice' of the lawsuit." *Cincinnati Insurance*, 296 Ill. App. 3d at 1016. Even though there is only one insurer in *Cincinnati Insurance* and the notice question hinged on separate claims filed in separate court systems, the court's reasoning that a complaint tendered in one lawsuit does not constitute sufficient notice under the terms of an insurance policy because of the "mere possibility" of a subsequent lawsuit is instructive.

The United States Court of Appeals has also addressed the issue of notice in claims made insurance policies.[2] For example, in *Resolution Trust Corp. v. Ayo*, 31 F.3d 285 (5th Cir. 1994), consolidated cases were brought by the Resolution Trust Corporation against former officers and directors of banks who carried claims made fiduciary li-

---

[1]The employer's insurance policy contained a notice provision similar to the one at issue in the instant case. *Cincinnati Insurance*, 296 Ill. App. 3d at 1015.

[2]Illinois courts often rely on decisions from other jurisdictions when confronted with a case of first impression. See, *e.g.*, *Jaime v. Director*, 301 Ill. App. 3d 930, 935-36, 704 N.E.2d 721, 725 (1998).

ability insurance policies with extension clauses. In both cases, the district court granted summary judgment because none of the evidence demonstrated compliance with policy notice requirements. In fact, in one case, the evidence showed that the insured's directors denied knowledge of any conduct that might lead to potential claims when they filled out policy renewal application forms. *Ayo*, 31 F.3d at 288. The court of appeals affirmed the district courts' rulings on the grounds that forwarding regulatory reports, management reports, financial statements, *complaints*, and other materials associated with two lawsuits filed against the bank and its director did not constitute objective compliance with insurance policy notice provisions. *Ayo*, 31 F.3d at 290-91; see also *Resolution Trust Corp. v. Artley*, 24 F.3d 1363, 1367-68 (11th Cir. 1994) (finding insufficient notice during policy period because no specific notice of wrongful acts tendered as required by terms of claims made policy).

In the case at bar, Aetna received notice of the Meredith claim during the policy period and defended the suit as required by the policy. But, it is unclear how the Meredith complaint could furnish notice for lawsuits filed almost three years later and deemed unrelated by both the United States District Court and the United States Court of Appeals. The language in Aetna's policy specifically required written notice of a wrongful act that might lead to a claim "containing particulars sufficient to identify the insured and any claimant and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured parties." This provision, in its most plain meaning, requires specific information regarding the insured's conduct and who was injured by wrongful acts. A complaint in an unrelated lawsuit does not satisfy the language of the policy.

The plaintiffs in Ahng, Snitchler and Johnson alleged different violations in their complaints, none had retired during March of 1991, and, in the case of Snitchler, one plaintiff had not retired at the time of filing his complaint in 1995, much less during 1991. On appeal, in *Ahng*, the court of appeals made clear that a group of plaintiffs who retired after March 31, 1991, alleged a very different claim from the plaintiffs in *Meredith*. *Ahng*, 96 F.3d at 1037. Moreover, Allsteel's application to Federal for coverage did not respond to whether Allsteel had ever given written notice of a potential claim under a prior fiduciary liability policy. As a result, if Allsteel had actually known of other specific claims, the company would have put Federal on notice during the underwriting process. Accordingly, we hold that transmission of the Meredith complaint to Aetna did not satisfy the notice requirement in the Aetna policy and we find the circuit court's grant

of Aetna's motion for summary judgment to be correct as a matter of law.

B. Claims Made Extension Clause

Federal next argues that the claims made extension clause in Aetna's policy forces Aetna to provide coverage for any future claims of which it had notice during the effective policy period. Federal contends that the wrongful acts alleged in the Meredith complaint were essentially the same acts alleged in the subsequently filed Ahng, Johnson and Snitchler cases. This argument rests on an assumption that the Meredith complaint met the Aetna policy's notice requirement.

Under the terms of its extension clause, Aetna covered claims made after the expiration of its policy if the insured gave the requisite written notice of potential claims during the actual policy period. The extension clause provided:

> "If, during the policy period hereof, the Insured shall first become aware of any Wrongful Act which may subsequently give rise to a claim against any Insured and shall during the policy period hereof give written notice to the Company of such Wrongful Act, then any such claim which is subsequently made against the Insured arising out of such Wrongful Act shall for the purposes of this policy be deemed to have been first made against the Insured during the policy period."

As noted above, a claims made insurance policy requires specific notice so that the insurer can identify the extent of its claims exposure in advance. *General Insurance*, 272 Ill. App. 3d at 514. In this case, Aetna did not have notice that other, unidentified groups of plaintiffs might file lawsuits regarding amendment of the 1991 plan. Therefore, since we find tender of the Meredith complaint did not constitute notice under the Aetna policy, the Meredith complaint did not place future claims within the coverage of the "Claims Made Extension Clause" in Aetna's policy.

C. Federal's Policy

Finally, Federal argues that the language in its policy precludes coverage of the Ahng, Johnson and Snitchler lawsuits. The language in paragraph 5(a) of Federal's policy stated in relevant part:

> "The Company [Federal] shall not be liable for Loss on account of any Claim made against any Insured:
>
> based upon, arising from, or in consequence of any circumstance if written notice of such circumstance has been given under any policy or coverage section of which this coverage section is a renewal or replacement and if such prior policy or coverage section

affords coverage for such Loss, in whole or in part, as a result of such notice ***."

■ Federal asserts that public policy forbids an insured from obtaining insurance for a loss the insured knows is already present, and therefore paragraph 5(a) of the Federal policy precludes coverage of the Ahng, Johnson and Snitchler claims. See *International Insurance Co. v. Peabody International Corp.*, 747 F. Supp. 477, 484 (N.D. Ill. 1990). Even though this is a plausible reading of the Federal policy's language, it does not explain how the Meredith complaint satisfied the written notice requirement in Aetna's policy, how the extension clause was invoked by tender of the Meredith complaint, or how Federal avoids its obligation to provide coverage for claims made within its policy period. Accordingly, we agree with Aetna's position and find that the language of the Federal policy does not preclude coverage for the Ahng, Johnson and Snitchler claims.

For the abovementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ZWICK and QUINN, JJ., concur.