COMMUNITY FOUNDATION FOR JEWISH EDUCATION,
Plaintiff–Appellant,

v.

FEDERAL INSURANCE COMPANY,
Defendant–Appellee.

No. 00–2276.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 2000.

Decided June 12, 2001.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

**ORDER**

The Community Foundation for Jewish Education sued the Federal Insurance Company, seeking coverage under a claims-made insurance policy. The parties filed cross-motions for summary judgment, and the district court granted summary judgment to the defendant. The Community Foundation for Jewish Education appeals, and we affirm.

**I.**

This case provides an unfortunate example of litigation about litigation. Prior to September 1993, the Board of Jewish Education (the "Board") was the central agency providing Jewish education in the Chicago area; the Board assisted synagogues and day schools which offered educational services in the community. The Board's largest source of funding was the Jewish Federation of Metropolitan Chicago ("Federation"), which distributes funds raised by the Jewish United Fund of Metropolitan Chicago.

In 1993, the Board, the Federation, and three of the Jewish religious movements (conservative, reform, and reconstructionist), formed a partnership called the Community Foundation for Jewish Education (the "Foundation"). This partnership sought to forge a closer relationship between the Board and the three religious movements and to more effectively provide educational services to the Jewish community. The Board rejected a proposal to merge with the Foundation, instead entering into a three-year partnership agreement with the Foundation. After the three-year term expired, the parties would decide whether to merge or proceed as separate entities.

Pursuant to this plan, on January 1, 1994, the Foundation and Board entered into five contracts which governed the partnership: the Frank G. Marshall Multi-Media Resource Center Operating Agreement; the Early Childhood Centers Operating Agreement; the Administrative Services Agreement; the Programming Agreement; and the Equipment and Premises Agreement. These contracts provided that the Foundation would take over the Board's functions through June 30, 1996. Apparently the Board was not happy with the partnership because before the end of the three-year period, it informed the Foundation that it did not want to continue the partnership beyond June 30, 1996.

Correspondence between the parties in May and June of 1996 indicates that there was disagreement over the process of terminating the partnership, and on March 18, 1997, the Board filed suit in Illinois Circuit Court against the Foundation (the "Board lawsuit"). In its original complaint, the Board alleged that the Foundation had breached the Equipment and Premises Agreement, claiming that the Foundation had failed to make required payments on two loans, with damages of $20,501.48, plus interest. The Foundation contended that the Board had waived its right to these payments.

Less than two months later, on May 6, 1997, the Foundation applied for a "Not For Profit Organization/Directors, Officers and Trustees Liability Policy" (the "Policy") with the Federal Insurance Company ("Federal"). The Policy is a claims-made policy, one that covers claims which are first made against the insured during the policy period. According to Lynn Stegner, the Foundation's Controller, the Board lawsuit was the "driving force" behind the Foundation's decision to apply for the Policy. The Foundation did not, however, disclose the March 1997 Board lawsuit on its insurance application, answering "none" to an application question which asked whether "[t]here has not been nor is there now pending any claim(s) against any person proposed for insurance in his or her capacity as either Director of [sic] Officer of the named Organization or any of its Subsidiaries...." Federal originally issued the Policy for a term of June 30, 1997 through June 30, 2000, although the Foundation cancelled the Policy effective June 30, 1998.

On November 20, 1997, the Board filed an Amended Complaint in the Board lawsuit, alleging a variety of wrongs. The Foundation moved to dismiss based on the manner in which the Amended Complaint was filed, and the Board agreed to file a Second Amended Complaint. On May 7, 1998, the Board filed a Second Amended Complaint containing ten counts against the Foundation and six counts against the Federation, which it alleged was the alter ego of the Foundation. The Board sought an accounting, and damages for breach of the five contracts, alleging conversion, tortious interference, and a conspiracy between the Foundation and the Federation. The Board's Second Amended Complaint sought over $1,000,000 in damages. The Foundation moved to dismiss the tortious interference claims, and the motion was granted with permission to replead. On February 24, 1999, the Board filed its Third Amended Complaint (not at issue in this appeal) after the Foundation had cancelled the Policy.

On May 14, 1999, the Foundation moved for summary judgment in the Board suit for all of the Board's counts except the claims of tortious interference. The Circuit Court granted the Foundation's motion, concluding that the claims at issue were utterly baseless.

While the Second Amended Complaint was pending, the Foundation filed a sepa-

rate lawsuit in state court against Federal. It sought a declaration that the insurance policy required indemnification and a defense against the Board litigation. Federal removed the complaint to federal district court on December 1, 1998. The parties filed cross-motions for summary judgment: the Foundation argued that the Board lawsuit was covered by the Policy because the amendments to the complaints in that suit added claims which were made for the first time during the Policy period, while Federal argued that the amendments were part of a pre-Policy claim and therefore not covered by the Policy. The district court granted summary judgment to Federal, finding no liability under the Policy. The district court held that the lawsuit was not covered because the amended complaints did not constitute a "claim first made" during the Policy period. The court also held that, even if the amended complaints contained new claims, they fell within exclusions under Part 4.1(b), another clause in the Policy. The Foundation appealed.

## II.

██ Under Illinois law, the interpretation of an insurance policy is a question of law. *See Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.,* 39 F.3d 138, 141 (7th Cir.1994). We review the district court's decision to grant summary judgment, as well as questions of insurance policy interpretation, *de novo. See Traveler's Insur. Co. v. Penda Corp.,* 974 F.2d 823, 827 (7th Cir.1992). Both parties assume that Illinois law applies to the Policy, and as it is the forum state, we will apply Illinois law in interpreting the Policy. *See Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 473 (7th Cir. 1991).

██ On appeal, the Foundation argues that the Policy provided insurance coverage for the first and second amended complaints filed against it by the Board because the amended complaints contained new claims first made during the Policy period. We begin our analysis with the relevant contract language. The Policy provides insurance coverage for "claims first made against the insured during the policy period," which began on June 30, 1997. The Policy then defines a "claim" as a:

> (i) written demand for monetary damages, (ii) civil proceeding commenced by the service of a complaint or similar pleading, (iii) criminal proceeding commenced by the return of an indictment, or (iv) formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation or similar document against an insured for a wrongful act including any appeal therefrom.

██ Under Illinois law, we must liberally construe the insurance policy in favor of the insured. *See United States Fidelity and Guaran. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926, 930 (1991). "Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary and popular sense.' " *Id.* (quoting *Hartford Accident & Indem. Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 294 N.E.2d 7 (1 Dist.1973)). If there is an ambiguity in the insurance policy, it must be resolved in favor of the insured, *see International Insur. Co. v. Rollprint,* 312 Ill.App.3d 998, 245 Ill.Dec. 598, 728 N.E.2d 680, 688 (1 Dist.2000), but courts must not search for ambiguity where none exists. *See Stiefel v. Illinois Union Ins. Co.,* 116 Ill.App.3d 352, 72 Ill.Dec. 141, 452 N.E.2d 73, 75 (1 Dist.1983).

In this case, the Policy's definition of "claim" precludes coverage of the pre-Policy Board lawsuit, including the amended complaints. The Policy explicitly states

that a claim is a "civil proceeding" that is "commenced by a complaint." This definition indicates a particular understanding of the phrase "civil proceeding." A complaint "commences" an action as a whole.[1] If someone is asked what sort of civil proceeding is set in motion by the service of a complaint or similar pleading, it is difficult to imagine any answer other than a lawsuit.

Thus, the amended complaints are not claims first made within the Policy period. A plain reading of the contract language precludes finding that amendments to a complaint made against the insured could commence a "civil proceeding" which had already been commenced by the filing and service of a complaint. Otherwise the same lawsuit against the insured would qualify as two different civil proceedings, one which was "first made" before the Policy period began and one which commenced after the Policy was signed. *Cf.* Wright and Miller, Federal Practice and Procedure, § 1052 (1987 and 2000 supp.) (describing commencement of federal civil action with filing of complaint); 735 ILCS 5/2–201 ("Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint."). *See also Ameriwood Ind. v. Am. Casualty Co.*, 840 F.Supp. 1143, 1152 (W.D.Mich. 1993) ("[A] claim to be successfully made under the . . . policy arose when a suit was brought. . . . A suit begins in federal court with the filing of a complaint. After the original filing, the suit is considered to be pending. Thus the amendment of the . . . complaint within the policy period does not constitute a new filing of the case.") (citations omitted).

In response, the Foundation cites decisions holding "that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed." *See Home Insurance Co. of Illinois v. Spectrum Inform. Tech., Inc.*, 930 F.Supp. 825, 846 (E.D.N.Y.1996) (listing cases interpreting claim in this manner for liability insurance policies). Under this definition, the Foundation argues that coverage exists because the amendments to the Board's Complaint were first made during the Policy period.

No doubt, as the citations in *Home Insurance* show, there are several ways in which a claim can be made, depending upon the language in the policy. But at least under the wording of the contract before us, once that first claim is made, subsequent variations of the same claim do not qualify as new claims. In this case, the Policy defined a "claim" more narrowly than those examined in *Home Insurance*. *See, e.g., Informix Corp. v. Lloyd's of London*, 1992 WL 469802, *2 (N.D.Cal.1992) (interpreting "claim" to indicate entire lawsuit based on specific Policy language). Therefore, the definition suggested in cases like *Home Insurance* is inapplicable to this case.

The Foundation argues that when the Board amended its complaint and alleged new "wrongful acts," a new "claim" arose as defined by the Policy, at least as to those acts unrelated to the wrongful acts set forth in the original complaint. But a "claim" here is defined as a civil proceeding "commenced" by a complaint, and because such a civil proceeding can only be commenced once, a new claim did not arise

---

1. The contract's reference to the "service of a complaint or similar pleading" does not alter our analysis. A "similar pleading," read in context, indicates a pleading which "commences" a civil proceeding in the same sense that a complaint does so. Federal suggests, for example, that a filing to commence arbitration proceedings would qualify as a similar pleading to a complaint.

under the Policy. The fact is that we are dealing with the same complaint that is twice amended, and that is not a new claim.

The Foundation also relies on a case that awarded insurance coverage where a complaint was amended to add the insured as a new party. *See, e.g., Checkrite Ltd., Inc. v. Illinois Nat'l Ins. Co.*, 95 F.Supp.2d 180 (S.D.N.Y.2000). It asserts that this example supports its position that a claims-made policy covers claims presented in the amended complaint. However, this case is distinct. If the insured is brought into the litigation for the first time through the amended complaint, the claim is obviously new to that entity; thus it is a claim first made. By coincidence, we have a clear example of this distinction in the case before us. In its Second Amended Complaint, the Board added a new defendant, Federation. Suppose Federation had purchased a policy similar to the one the Foundation had with Federal. Although the original lawsuit would have pre-existed the Federation's (hypothetical) policy, the amendment would be a claim first made against Federation after the policy was in place. In such cases, the proceeding is a new proceeding with respect to the insured, and courts accordingly hold that the amended complaints were covered even though the original complaint was filed before the insurance policy went into effect.

The Foundation would like us to extend the same logic to "wrongful acts," because the "claim" definition refers to a civil proceeding commenced for a "wrongful act," and new wrongful acts are alleged in the Board's amended complaints. *See* App.

Br. at 9 ("In other words, the Amended Complaint is the commencement of the proceeding for the new wrongful act."). However, the "wrongful acts" language must be read in the context of the unambiguous definition of a "claim" as a civil proceeding commenced by a complaint. And the *Checkrite* decision did not involve a definition of a "claim" that referenced the commencement of the proceeding by a complaint. As a result, that decision has limited bearing on the present case.[2] Under this Policy the filing of the complaint initiated the claim. But the Policy was not in place at the time, thus there was no coverage. The plain meaning of the Policy rejects the Foundation's attempt to describe claims added to the original (uncovered) claim as new.

As explained by the Illinois courts, "[t]he purpose of a claims made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty." *Aetna Cas. & Sur. Co. v. Allsteel, Inc.*, 304 Ill.App.3d 34, 237 Ill.Dec. 425, 709 N.E.2d 680, 685 (1 Dist.1999). The Policy language in this case serves this purpose by allowing the insurance company to know in advance that its exposure will not include the outgrowth of a pre-policy lawsuit. In addition, a claims-made policy like the one here cuts both ways. Although the insurance policy excludes liability for amendments to pre-policy suits, the insurance company would be liable for subsequent amendments to claims first brought during the policy period.

**2.** One could argue that if the Foundation filed a separate lawsuit setting out one or more of the allegations that were added to the Second Amended Complaint in this case (*e.g.*, tortious interference), it would be a "claim first made" against the Foundation. Perhaps that would technically commence an action as discussed above, but it might also invoke the exclusion in Part 4.1(b), excluding liability for any claim arising from "any demand, suit or other proceeding pending ... or the same or any substantially similar fact, circumstance or situation underlying or alleged therein."

## III.

If amendments to the original complaint are labeled new claims, the insurer that is not obligated to defend or indemnify the original complaint would be exposed to open-ended liability for claims it did not have an opportunity to assess when setting a premium. As discovery proceeds, new variations of the excluded claim will be uncovered. Insurance coverage for this type of protracted litigation would likely require a much higher premium than for coverage where the insured represents that no claims existed when the insurance application was submitted. The plain meaning of the contract language does not cover subsets and derivatives of the original complaint that is excluded because it pre-existed the effective date of the policy. In sum, the "claim" definition in the Foundation's insurance policy cannot be reasonably construed to make the policy cover new allegations in a proceeding already commenced against the Foundation.[3]

We conclude that the underlying lawsuit is not covered under appellant's claims-made policy because the amended complaints were not claims first made during the policy period. We draw no conclusions as to the merits of the district court's alternative grounds for its holding. The district court is AFFIRMED.

---

**3.** Federal also contends that the underlying suit is excluded because the Foundation had knowledge of acts, errors, or omissions that might give rise to a claim prior to the policy inception date. In light of our holding, we do not address this alternative argument.